A97A2345. WEST v. CSX TRANSPORTATION, INC. et al.
(498 SE2d 67)

POPE, Presiding Judge.

In this suit alleging continuing nuisance and trespass, Duane West claims his property flooded repeatedly because defendants CSX Transportation and the Polk County Chapter of Georgia Rails Into Trails ("GRITS") failed to maintain drainage control on a railroad right of way that ran through West's property. CSX abandoned the line in 1988 and pulled up the rails in 1991. West's suit claims that when CSX abandoned the right of way, the drainage ditches clogged with sediment and plant growth. Removing the rails, West argues, also channeled water off the right of way and onto his property. In 1995 CSX sold the strip of land to GRITS, a nonprofit recreational group. West claims GRITS is responsible for continuing the nuisance that CSX created. The trial court granted summary judgment to GRITS and CSX. We reverse its judgment on the nuisance claims because the trial court improperly found them barred by West's failure to provide notice to the defendants and by a statute of limitation. We find that a jury should determine whether the failure of CSX and GRITS to maintain the drainage ditches created a continuing nuisance for which these defendants are responsible.

1. *Notice.* The trial court erred when it found West's nuisance claims barred by a failure to give CSX notice to abate the nuisance. A purchaser of property on which a nuisance exists must be given notice of the nuisance before he may be held responsible for it. OCGA § 41-1-5 (b). However, notice to the person who creates a nuisance is not a prerequisite to the creator's liability. See *Smith v. Branch*, 226 Ga. App. 626, 629 (2) (d) (487 SE2d 35) (1997). Therefore, West was not required to give CSX notice to abate the nuisance before he filed

this action.

Such notice to GRITS, the purchaser, was a prerequisite to its liability for any nuisance, but the trial court erred by finding as a matter of law that no notice was given. "Notice to [a purchaser] that he will be held responsible for any damages subsequently caused by the nuisance will suffice in lieu of a specific request to abate. [Cits.]" *Hoffman v. Atlanta Gas Light Co.*, 206 Ga. App. 727, 731 (2) (426 SE2d 387) (1992). Based on the record before us, a question of fact appears as to whether GRITS was given notice to abate or notice that it would be held liable if it purchased the property and continued the nuisance. Evidence shows that a representative of GRITS discussed the drainage problems with representatives of both CSX and West in 1994, months before GRITS purchased the property. Therefore, a question of fact exists as to what notice West gave GRITS regarding the nuisance and the responsibility GRITS would have for continuing it.

2. *Statute of Limitation.* The trial court also erred when it found that the four-year statute of limitation for property damage barred West's claim that removing the rails, cross-ties, and ballast created or contributed to the nuisance. Whether any representative of CSX acted negligently in removing these structures is not the question; rather, the question is whether those acts created or contributed to a continuing nuisance.[1] "[E]very continuance of a nuisance which is not permanent, and which could and should be abated, is a fresh nuisance for which a new action will lie. Consequently suit may be maintained for damages growing out of a nuisance of the character indicated, where the damages were inflicted within four years before the time of filing suit, though the act which originally caused the nuisance was not done within the period of limitation of the action." (Citations, punctuation, and emphasis omitted.) *Hoffman*, 206 Ga. App. at 730. See also *Goble v. Louisville &c. R. Co.*, 187 Ga. 243, 249 (3) (200 SE 259) (1938). West's suit claims CSX created a continuing nuisance. Therefore, if a jury finds these acts created the nuisance or contributed to the nuisance, West may recover for any damage inflicted on the property within the four years preceding his filing of this suit. See *Smith*, 226 Ga. App. at 628.[2]

3. *The Continuing Nuisance Allegations.* Reaching the merits of

---

[1] West has not raised, and we do not address, the propriety of summary judgment on West's negligence claims unrelated to his nuisance claims.

[2] We note that neither the parties nor the court has addressed whether the nuisance is, in fact, permanent or abatable. But see *Brand v. Montega Corp.*, 233 Ga. 32, 33 (1) (209 SE2d 581) (1974) ("In a surface-water invasion case, the continuing invasions amount to a continuing trespass which is the equivalent of a continuing nuisance."). As to the measure of damages in a "continuing nuisance" case, see *City of Columbus v. Myszka*, 246 Ga. 571, 573 (6) (272 SE2d 302) (1980).

West's nuisance claim, we review the record de novo and construe the evidence and all reasonable inferences strongly in West's favor to determine whether any genuine issue of fact creates questions for a jury. See generally *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). The record shows that in 1903, CSX's predecessor in title purchased from West's predecessor in title this strip of land running through what is now West's farm. Along this strip, and apparently parallel to or on top of a creek, the railroad built an elevated roadbed. As CSX acknowledges in its appellate brief, "the railroad company knew that changes in the flow of the creek would be caused by construction of the railroad, and [it] attempted to address those changes by conveying [in the 1903 deed] the right to change the course of the stream" by building drainage ditches parallel to the roadbed.

With the roadbed and drainage ditches in place, West's property was subject to flooding twice a year. The railroad maintained its right of way, drainage ditches, and culverts until it abandoned the line in 1988. Sediment and plant growth then began to fill the ditches. When CSX pulled its rails in early 1991, ruts were created which channeled water from the roadbed onto West's property. Beginning in March 1991, witnesses testified, West's property adjacent to the right of way began to experience flooding, erosion, and sedimentation problems. Beavers built dams on the property, exacerbating the situation.

West's experts testified that the topography of the land naturally conducted water from West's property onto the right of way without ponding or flooding. They opined that the flooding and sedimentation which began in 1991 resulted from the railroad's failure to maintain its ditches, embankments, and culverts as well as from CSX's removal of the rails, cross-ties, and gravel.

(a) *CSX's Liability*. Two basic principles apply here. First, the owner of a lower tract of property owes a servitude to the owner of an adjoining higher tract and is required to receive surface waters which normally flow from the higher lot. *Rinzler v. Folsom*, 209 Ga. 549, 552 (1) (74 SE2d 661) (1953). It appears that when the railroad built its elevated roadbed at the turn of the century, it built ditches to accommodate the runoff which would have otherwise flowed from West's property into the creek upon which the roadbed was constructed. Second, "[t]he owner of a drainage ditch is under a duty to maintain it so that the surface waters do not overflow to the damage of adjacent property owners. [Cit.] Similarly, the owner of a creekbed containing a creek flowing through culverts constructed by such owner or his predecessor in title is under a duty to maintain them so that the waters do not overflow to the damage of adjacent property owners." *Equitable Life Assur. &c. v. Tinsley Mill Village*, 249 Ga. 769, 771 (1) (294 SE2d 495) (1982). From those two principles is

derived the rule that "[w]here a railroad company constructs a fill or embankment which obstructs the natural drainage and flow of water from adjacent land belonging to another, and in order to prevent the water from backing upon the land the railroad company constructs a ditch or drain to carry off the water, the railroad company owes a duty to the owner of the land not to permit the ditch to fill up and become obstructed so as to turn the water back upon the adjacent land." *Southern R. Co. v. Thacker*, 50 Ga. App. 706 (1) (179 SE 225) (1935) (physical precedent only). Therefore, CSX had a duty to maintain its ditches to accommodate the naturally-occurring runoff. One who creates a nuisance is liable for it even if he has sold the property containing the nuisance. *McMillen Dev. Corp. v. Bull*, 228 Ga. 826, 828 (3) (a) (188 SE2d 491) (1972).

CSX argues that the flooding was caused by beavers, a naturally-occurring problem for which the railroad had no responsibility, and that West could have removed the beaver dams himself. See *Bracey v. King*, 199 Ga. App. 831, 832 (406 SE2d 265) (1991). The railroad also produced evidence showing that the ditches had actually caused West's property to be drier than it would have been naturally.[3] But these issues merely present questions of fact. "When a surface-water invasion has taken place, whether it amounts to a compensable tort is a question of fact for the jury. Nature, gravity, velocity, and relativity, as well as the acts of the alleged tortfeasor, are matters that must be considered in determining whether a surface-water invasion constitutes a trespass for which damages are recoverable." *Brand v. Montega Corp.*, 233 Ga. at 34. West has presented evidence showing the flooding would have occurred even absent the beavers as well as evidence showing that CSX's failure to maintain the ditches effectively turned the raised roadbed into a dam. Moreover, CSX could be responsible for its failure to remove any beaver dams which were blocking a drainage ditch or culvert which it had a duty to maintain, because CSX could not "co-operate with . . . the forces of nature to the injury of" West. (Punctuation omitted.) *Bracey*, 199 Ga. App. at 832. Therefore, the question of whether CSX caused a continuing nuisance, the type and amount of damages resulting from any nuisance, and West's mitigation of damages are properly questions for a jury to decide.

Although the trial court's opinion does not address it, we note that a 1917 release entered between the railroad and West's predecessor in title did not relieve the railroad from responsibility for maintaining the ditches. That document did free the railroad from

---

[3] West has not raised any issue of prescriptive rights. But see *Brown v. Tomlinson*, 246 Ga. 513, 514-515 (272 SE2d 258) (1980) (through passage of time, landowner on upper end of lake acquired prescriptive right to maintenance of dam by dam's owner).

any duty to make its ditches any larger or create additional drainage controls. However, the release specifically provided that the railroad would continue "to the extent required by the law of Georgia as it exists in the absence of contract . . . be liable for failure to keep clear of rubbish and sediment or other like odstructions [sic] existing in ditches on its own right of way or ditches thereon widened or deepened by [West's predecessor in title]."

(b) *GRITS' Liability.* "[T]he maintenance of the nuisance after notice is continuance of the nuisance, and the [purchaser] of the property causing the nuisance is responsible for that continuance, if there is a request for abatement before action is filed. [Cit.]" *Hoffman v. Atlanta Gas Light Co.*, 206 Ga. App. at 732. Given the evidence showing that West discussed the drainage problems with a GRITS representative even before GRITS purchased the property, and that GRITS did nothing to correct the drainage problems after it purchased the property, a jury must decide whether GRITS is responsible for maintaining a nuisance after notice to abate and whether its maintenance of a nuisance has damaged West.

4. Our reversal of the trial court's judgment makes it unnecessary for us to consider West's remaining enumeration.

*Judgment reversed. Johnson and Blackburn, JJ., concur.*

DECIDED FEBRUARY 13, 1998 —
RECONSIDERATION DENIED MARCH 3, 1998

*Ann Moceyunas, James S. Astin,* for appellant.
*Casey, Gilson & Williams, James E. Gilson, Sandra Gray,* for appellees.