## A05A1871. WALKER et al. v. JOHNSON et al.

(630 SE2d 70)

PHIPPS, Judge.

Ronald and Theresa Walker purchased real property from Frances King in July 2000, and later discovered that the property had severe drainage problems and was subject to flooding. The Walkers sued King, Keith Johnson (the developer), Michael Jenkins (the builder), Heidt Real Estate Services, Inc. d/b/a Century 21 Heidt Realty (the seller's broker) and Nadine Seckinger (the listing agent), asserting various theories of liability. The trial court granted motions for summary judgment filed by Johnson, Jenkins, Century 21 and Seckinger. The Walkers appeal the award of summary judgment to Johnson on their nuisance claim and the award of summary judgment to Century 21 and Seckinger on their claims for fraud and negligent misrepresentation. We conclude that Johnson was not entitled to summary judgment and reverse that portion of the judgment. We conclude that the trial court properly granted summary judgment to Century 21 and Seckinger, albeit for different reasons,[1] and affirm that portion of the judgment.

Johnson was the sole developer of a subdivision known as Oakwood Estates. When he purchased the property, it was raw land. After the property was rezoned, Johnson hired an engineering firm to design a layout for the subdivision. Preliminary drawings were submitted to the City of Springfield for approval, and then construction of the subdivision began. Johnson testified that he did not know exactly how the drainage for the subdivision was supposed to work because he is not an engineer. He hired a company to install the water, sewer and storm drain and another company to install the curbs and gutters. Johnson assisted in coordinating the installation process and was at the construction site every day. Johnson's company cleared the right of way for the subdivision, but did not do any grading work. Johnson considered the subdivision completed in March 1996, when the lots were subdivided and ready for sale. Very few of the lots had been cleared at that time. In April 1996, the subdivision plat was approved by the City of Springfield and the engineer hired by

---

[1] See *Gilliam v. Fletcher Bright Co.*, 244 Ga. App. 315, 317 (2) (535 SE2d 325) (2000) (a grant of summary judgment that is right for any reason may be affirmed).

Johnson certified that the streets, drainage system, sewer system and water system in the subdivision had been installed in accordance with the approved construction drawings.

In October 1997, Johnson sold several lots, including Lot 7, the lot the Walkers ultimately purchased, to Jenkins and two other men. Johnson testified that he may have been involved in clearing the land before houses were built, but he did not do any grading. Johnson was not involved in building any houses.

After Jenkins purchased Lot 7, he built a house on it. During construction, Jenkins noticed that water accumulated in the back, left-hand corner of the lot. He reported the problem to Johnson and the City of Springfield, but they did nothing about it. Jenkins attempted to correct the problem by digging a trench between two other lots to divert some of the water to the road. Jenkins quitclaimed his interest in the property to Brittwood Homes, which sold Lot 7 to King in July 1998. Seckinger was the listing agent for the property. In February 1999, King wrote a letter to Brittwood Homes, c/o Jenkins, complaining of drainage problems and standing water in the back yard. Jenkins suggested that King talk to Johnson or the City of Springfield.

The Walkers first saw King's house in June 2000. Seckinger, whose real estate license was affiliated with Century 21, was the listing agent for King, but another Century 21 agent showed the property to the Walkers. After their second visit to the property, the Walkers made an offer to King through the other Century 21 agent. King made a counteroffer, which the Walkers accepted. At that time, the Walkers received a seller's property disclosure statement from the Century 21 office. The statement indicated that the seller was not aware of any past or present drainage or flooding problems. On the Walkers' third visit to the property, Seckinger was with them. Seckinger testified that she was aware of the drainage problem, but that she probably did not review the disclosure statement completed by King for accuracy and did not know that it was inaccurate until after the closing.

The Walkers went to the house several times before the closing and noticed fresh dirt in the back yard. They hired a home inspector to inspect the property before closing and Ronald Walker was with the inspector most of the time during the inspection. According to Walker, the inspector pointed out tire tracks with standing water in the back yard during the inspection. The inspector also noted on his inspection report that signs of poor drainage existed. The inspector, however, executed an affidavit in which he stated that he did not detect a drainage problem in the back yard and that, if he had, he would have referred the Walkers to an engineer.

The Walkers first noticed drainage problems in their back yard in September 2000. Ronald Walker testified that when it rained, a "river" covered half of their back yard and the water then remained in the yard until the sun dried it or it eventually drained. The Walkers talked to Seckinger about the problem and she told them that she would try to get someone to fix it. She contacted Johnson, but he took no action to correct the problem. Ronald Walker also spoke to Johnson about the problem and Johnson agreed to work on it. Johnson did no work to address the problem, but instead suggested that Walker hire a lawyer.

On March 16, 2001, the Walkers, through their attorney, sent a letter to Seckinger, demanding rescission and offering to return the property. On March 25, 2002, the Walkers filed their lawsuit. They sued Johnson for negligent construction of the subdivision drainage system and nuisance. They sued Century 21 and Seckinger for fraud and negligent misrepresentation.

The trial court granted Johnson's motion for summary judgment on the Walkers' nuisance claim based on its determination that the complaint was filed after the applicable statute of limitation had expired. The trial court granted Century 21's motion for summary judgment based on its determination that Seckinger was an independent contractor. As to the claims against Seckinger, the trial court held that the Walkers had failed to exercise due diligence as a matter of law and were therefore precluded from asserting their claims of fraud and negligent misrepresentation.

We review the trial court's grant of summary judgment under a de novo standard.[2] Summary judgment is appropriate only when all the facts and reasonable inferences from those facts, viewed in the light most favorable to the nonmoving party, show that there is no triable issue as to each essential element of the case.[3]

1. *The nuisance claim against Johnson.* The Walkers claim that Johnson and certain subcontractors created a nuisance on their property by altering the land so as to increase the water flow on the property. David Sladek, an engineer hired by the Walkers, opined that the development of the subdivision altered the natural flow of the water and increased the water flow and erosion on the Walkers' property. He also stated that he had reviewed the "sanitary sewer and water distribution plan" and the "grading drainage and paving plan" for the subdivision. According to Sladek, these plans mandated the construction of water collection and control structures on the sides of

---

[2] *Gaither v. Sanders,* 259 Ga. App. 810 (578 SE2d 512) (2003).

[3] *Clifton v. Zemurray,* 223 Ga. App. 756, 757 (478 SE2d 897) (1996).

the Walkers' property and other property in the subdivision. None of the required structures had been built.

Johnson owned the lot behind the Walkers' property. At some point after the Walkers purchased their property, Johnson had the trees on his property harvested and the land prepared for planting. Theresa Walker testified that the drainage problem became worse when those trees were removed. Sladek stated that it was probable that when Johnson cleared his land, he increased the surface water flow and erosion over the Walkers' property.

Relying on *City of Macon v. Macrive Constr.*,[4] the trial court determined that the Walkers' nuisance claim against Johnson was barred by the applicable four-year statute of limitation.[5] In *Macrive*, two groups of homeowners sued a construction company that had installed a drainage pipe too small to handle the drainage of the two lots on which it was installed. Because the pipe was inadequate, the homeowners experienced flooding during heavy rains. This court held that the statute of limitation on any alleged nuisance claim began to run the year the property first flooded, which was more than four years prior to suit being filed.[6] As a result, the homeowners' claims were barred.[7] One group of homeowners did not purchase their lot until after the flooding first occurred, but were nonetheless barred from pursuing their claims because the property they later purchased had first flooded more than four years before they filed suit. This court also stated that because no evidence showed that the construction company had taken any action after the pipe was installed that increased the flooding problem, no continuing nuisance was shown.[8]

Here, the first indication of a drainage or flooding problem on the property the Walkers ultimately purchased occurred in 1997, when Jenkins noticed standing water in the back, left-hand corner of the property. The Walkers did not file suit until March 2002. Consequently, their nuisance claim against Johnson for construction of the subdivision drainage system was barred by the statute of limitation.[9]

However, the Walkers presented evidence that Johnson's actions in clearing the trees from his land increased the flooding problem in their back yard. That action was taken after the Walkers purchased their property in July 2000. The statute of limitation therefore would not bar the Walkers' continuing nuisance claim.[10]

---

[4] 241 Ga. App. 396 (525 SE2d 418) (1999).

[5] OCGA § 9-3-30 (a).

[6] *Macrive Constr.*, supra at 397.

[7] Id.

[8] Id.

[9] See id.

[10] Cf. id.; see *Shaheen v. G & G Corp.*, 230 Ga. 646, 647-648 (2) (198 SE2d 853) (1973).

Johnson does not address the Walkers' claim that his actions in clearing his land created a nuisance. The trial court ruled that Johnson could not be held liable for clearing his land because he had a legal right to do so. But even a legal act can constitute a nuisance.[11] The Walkers presented evidence that Johnson's actions in clearing trees from his adjacent property increased the surface water flow and erosion on their land and made their drainage problem worse. These facts would support a finding of a continuing nuisance.[12] Thus, the trial court erred by granting summary judgment to Johnson on this nuisance claim.[13]

2. *The claims against Seckinger.* In Count 1 of their complaint, the Walkers sought to rescind the contract and assert a claim for fraud against Century 21, Seckinger and King. The Walkers alleged that these defendants concealed the drainage and flooding problems on the property to induce them to purchase the home. In Count 2, the Walkers sought rescission or damages from Century 21, Seckinger and King for failing to disclose the drainage and flooding problems. Although the trial court did not rule on the rescission claim specifically, we must address it to determine if the Walkers are bound by the terms of the purchase and sales agreement.

A purchaser who alleges a claim for fraudulent inducement to enter a sales contract has an election of two remedies: rescission or affirmation of the contract.[14]

> An announcement of the intent to rescind the contract must be made in a timely fashion, as soon as facts supporting the claim for rescission are discovered. Moreover, the aggrieved party must adhere to the intent to rescind and may waive any claim for rescission by failing to do so.[15]

Here, the Walkers testified that they discovered the drainage and flooding problems in September 2000, approximately two months after they purchased the property. They did not notify Century 21, Seckinger or anyone else of their intent to rescind the contract until more than six months later, in March 2001. An unreasonable delay in

---

[11] OCGA § 41-1-1.
[12] See *Shaheen,* supra at 648.
[13] See id. at 648-649.
[14] *Buckley v. Turner Heritage Homes,* 248 Ga. App. 793, 795 (2) (547 SE2d 373) (2001).
[15] Id. (citation and punctuation omitted).

the election of rescission as a remedy results in the waiver of that claim.[16] We therefore conclude that the Walkers have waived their claim for rescission.[17]

Having waived any right to rescind the contract, the Walkers have chosen to affirm the contract and are now bound by its terms, including the merger clause and disclaimer.[18] The contract includes a disclaimer provision, which provides that buyer and seller have not relied upon any advice, representations or statements of the brokers[19] and that buyer and seller agree that the brokers are not responsible to advise them on any matter. The Walkers are bound by the terms of that provision.[20]

The contract also provides that

[t]his Agreement constitutes the sole and entire agreement between the parties hereto and no modification or assignment of this Agreement shall be binding unless signed by all parties to this Agreement. No representation, promise, or inducement not included in this Agreement shall be binding upon any party hereto.

This clause precludes any reliance on alleged misrepresentations not contained within the contract.[21]

The Walkers argue that the disclosure statement, which was specifically incorporated into the contract, was a misrepresentation for which Seckinger should be held liable. The disclosure statement, however, was clearly limited to representations made by the seller. We conclude that the trial court properly granted summary judgment to Seckinger on the Walkers' claims against her.[22]

3. *The claims against Century 21.* The Walkers claim that Century 21 violated OCGA § 10-6A-5 (b) (1), which essentially provides that a broker engaged by a seller must timely disclose to all parties with whom the broker is working, all adverse material facts

---

[16] Id.

[17] See id. (ten-month delay before seeking rescission was unreasonable as a matter of law); see also *Orion Capital Partners v. Westinghouse Elec. Corp.*, 223 Ga. App. 539, 543 (2) (b) (478 SE2d 382) (1996) (attempt to rescind contract seven months after misrepresentation discovered was too late as a matter of law to constitute an effective rescission).

[18] *Sudler v. Campbell*, 250 Ga. App. 537, 540-541 (1) (550 SE2d 711) (2001).

[19] In the contract, the term "broker" was defined as a licensed Georgia real estate broker and the broker's affiliated licensees.

[20] See *Hightower v. Century 21 Farish Realty*, 214 Ga. App. 522, 524 (1) (448 SE2d 271) (1994).

[21] *Sudler*, supra at 541; *Pennington v. Braxley*, 224 Ga. App. 344, 346 (1) (480 SE2d 357) (1997).

[22] See *Hightower*, supra (fraud claim); *Salinas v. Skelton*, 249 Ga. App. 217, 223-224 (4) (547 SE2d 289) (2001) (negligent misrepresentation claim).

pertaining to the physical condition of the property that are known by the broker and could not be discovered by a reasonably diligent inspection of property by the buyer. The Walkers have not attempted to show that Century 21 knew of the drainage and flooding issues associated with their property,[23] but instead claim that Century 21 is liable for negligence or negligent misrepresentation for failure to oversee the sales transaction and failure to oversee Seckinger because it did not comply with the requirements of OCGA § 43-40-18 and Ga. Comp. R. & Regs. r. 520-1-.10 (4). Century 21 counters that it is not responsible for Seckinger's alleged misconduct because she was an independent contractor.

(a) OCGA § 43-40-18 (b) provides that a real estate broker shall be held responsible for any licensee whose license is affiliated with such broker's firm should such licensee violate any of the provisions of Title 43, Chapter 40, unless the broker demonstrates that the broker had reasonable procedures in place for supervising the licensee, did not participate in the violation and did not ratify the violation. This provision does not create liability for Century 21 in this case. First, we note that the Walkers have not pointed to any particular provision of Title 43, Chapter 40 that they claim Seckinger has violated. Second, OCGA § 43-40-30.1 provides that nothing in Title 43, Chapter 40 "shall be construed as establishing an employer-employee or broker-independent contractor relationship between licensees. Whether brokers and their affiliated licensees establish employer-employee or broker-independent contractor relationships shall be at the discretion of the licensees." Thus, Century 21 and Seckinger were free to create a broker-independent contractor relationship and the Walkers needed to demonstrate an issue of fact regarding whether Seckinger was an independent contractor before they could attempt to hold Century 21 liable for her alleged misconduct.[24]

(b) Ga. Comp. R. & Regs. r. 520-1-.10 (4), promulgated by the Georgia Real Estate Commission, provides that a licensee shall not falsify or be a party to the falsification of a document involved in a real estate transaction. This regulation does not create liability for Century 21. The Georgia Real Estate Commission is authorized only to promulgate rules and regulations that are regulatory in nature.[25]

---

[23] Phillip Heidt, the sole owner of Century 21, testified that he never met or spoke to King or the Walkers prior to the closing and that he had no knowledge of the drainage problems prior to the closing.

[24] See *Johnson Realty v. Hand*, 189 Ga. App. 706, 716 (20) (377 SE2d 176) (1988); Division 3 (c), infra.

[25] *Johnson Realty*, supra at 709 (3).

Those rules and regulations regulate the licensing of persons involved in the real estate business, but cannot create civil liability for a real estate broker.[26]

(c) Century 21 cannot be held liable for Seckinger's alleged misconduct because she was an independent contractor.

> The employer generally is not responsible for torts committed by his employee when the latter exercises an independent business, and in it is not subject to the immediate direction and control of the employer. In determining whether the relationship of parties under a contract for performance of labor is that of employer and servant or that of employer and independent contractor, the chief test lies in whether the contract gives, or the employer assumes, the right to control the time, manner, and method of executing the work as distinguished from the right merely to require certain definite results in conformity to the contract. Where the contract of employment clearly denominates the other party as an independent contractor, that relationship is presumed to be true unless the evidence shows that the employer assumed such control.[27]

Seckinger's employment contract with Century 21 specifically provided that Seckinger was associated with the company as an independent contractor and not as a servant, employee or partner. Phillip Heidt, the designated company representative, testified that Seckinger did not need his permission to enter into a listing contract on behalf of Century 21, that he had very little control over independent contractors and that he got involved in a transaction Seckinger was handling only if something unusual came up or if Seckinger sought his advice. Seckinger testified that she provided a lot of the tools necessary to perform her job. The Walkers presented no evidence that Century 21 assumed the right to control the time, manner or method of Seckinger's work. Accordingly, the trial court properly granted Century 21's motion for summary judgment.[28]

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Mikell, J., concur.*

---

[26] Id. at 709-710.

[27] *Bartlett v. Northside Realty Assoc.*, 191 Ga. App. 10-11 (380 SE2d 744) (1989) (citations and punctuation omitted).

[28] See id. at 13.

DECIDED MARCH 27, 2006 —
RECONSIDERATION DISMISSED APRIL 13, 2006.

*Duffy & Feemster, Matthew M. Bush,* for appellants.

*Ratchford & Kicklighter, Claude M. Kicklighter, Jr., Berman, Fink & Van Horn, Charles H. Van Horn, Steven A. Wagner,* for appellees.