A07A0882. GREEN v. EASTLAND HOMES, INC. et al.
A07A0883. EASTLAND HOMES, INC. v. GREEN.
(644 SE2d 479)

BLACKBURN, Presiding Judge.

In this action for nuisance and trespass against three defendants arising out of excessive water runoff onto Karen Green's land, plaintiff Green in Case No. A07A0882 appeals that portion of the trial court's order granting summary judgment to defendant Dozier Development Company, arguing that some evidence showed that Dozier had caused the increased runoff. We agree and reverse that portion of

---

the judgment. In Case No. A07A0883, defendant Eastland Homes, Inc. appeals that portion of the trial court's order denying complete summary judgment to Eastland, arguing that no competent evidence showed that Eastland had contributed to the runoff. We disagree and affirm that portion of the judgment. As to the remaining unchallenged portions of the judgment, we affirm.

Summary judgment is only proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). "A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." *Matjoulis v. Integon Gen. Ins. Corp.*[1]

So construed, the evidence shows that Green purchased a home in 1995, where she has lived through the present time. Her backyard ended in a steep 30-foot wooded slope, most of which belonged to her, which ascended to the undeveloped property behind her. The undeveloped property was eventually sold to Dozier in 1998. Dozier prepared the property for a residential subdivision in late 1998 by clear-cutting the trees and vegetation and creating an infrastructure through grading, providing for drainage, and installing roads, curbs, and sewer lines. Dozier's responsibilities included erosion control at the site.

Once completed with its portion of the development, Dozier sold the property to Eastland Homes in March 1999. Eastland developed the property further by doing final grading, building houses and driveways on the lots, backfilling the sites, and completing the landscaping for the houses. Eastland sold the two lots backing onto Green's property in September 1999 and February 2000 to separate purchasers.

In June 1999, while Eastland still owned the two lots, a heavy rainstorm resulted in torrents of water cascading down the slope from the lots and onto Green's backyard, immersing the backyard and patio and filling up the crawlspace under Green's home, which damaged the furnace and air conditioner located in that space. Since then, other rainstorms have produced similar results and caused cracks in walls and structure of Green's home and also resulted in an odorous mold and mildew under the house, which Green claims has caused her personal injury.

Green sued Dozier, Eastland, and the previous landowner for nuisance and trespass, claiming that these three entities had disturbed and developed the land in such a way as to artificially increase

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

the amount of water running down the slope. Denying liability, all three moved for summary judgment, arguing that no evidence showed that their activities increased the water flow to Green's property. The trial court agreed as to Dozier and the previous landowner and granted them summary judgment. The trial court granted Eastland's motion insofar as it concerned Green's alleged personal injuries arising from the mold but otherwise denied Eastland's motion. In Case No. A07A0882, Green appeals that portion of the order granting summary judgment to Dozier, and in Case No. A07A0883, Eastland appeals that portion of the order denying its motion for summary judgment on the remaining claims for damages.

1. Green argues that some evidence showed that Dozier's activities contributed to the excessive water runoff and that therefore summary judgment to Dozier was improper. We agree and therefore reverse that portion of the order granting summary judgment to Dozier. For similar reasons, we also hold that some evidence showed Eastland's activities contributed to the runoff, and we therefore affirm that portion of the order denying summary judgment to Eastland.

Last year, the Supreme Court of Georgia reiterated the law in this area: "In surface water run-off disputes where two lots adjoin, the lower lot owes a servitude to the higher, so far as to receive the water which naturally runs from it, provided the owner of the latter has done no act to increase such flow by artificial means." (Punctuation omitted.) *Menzies v. Hall.*[2] See *McMillen Dev. Corp. v. Bull.*[3] Thus, "[a]lthough property must accept the natural runoff of water from neighboring lands, an artificial increase or concentration of water discharge may give rise to a cause of action." (Punctuation omitted.) *Greenwald v. Kersh.*[4] See *Sumitomo Corp. of America v. Deal*[5] (landowner has no right to cause water to be discharged upon lower land in a manner different from that in which the water would be received by the lower land if the water simply ran down upon it from the upper property by the law of gravitation).

The question therefore is whether Green presented evidence showing that Dozier and Eastland engaged in activities that artificially increased the water runoff from their upper land onto her lower land. In this regard, Green presented an expert affidavit that the development of the upper property resulted in the flooding of Green's property.

---

[2] *Menzies v. Hall*, 281 Ga. 223, 225 (1) (637 SE2d 415) (2006).
[3] *McMillen Dev. Corp. v. Bull*, 228 Ga. 826, 828 (1) (188 SE2d 491) (1972).
[4] *Greenwald v. Kersh*, 265 Ga. App. 196, 197 (1) (593 SE2d 381) (2004).
[5] *Sumitomo Corp. of America v. Deal*, 256 Ga. App. 703, 705 (1) (569 SE2d 608) (2002).

> The flooding has been caused by the clearing and removal of trees, natural vegetation, and topsoil; the alteration of the natural topography through grading, cut and fill operations; the construction of impervious structures and surfaces; and the failure to properly construct and maintain adequate drainage systems and erosion control measures.

In his Flood Inspection Report attached as an exhibit to his deposition, this expert set forth in detail (with explanatory photographs) his observations concerning the substantial erosion of the two upper lots, which were barren of grass and groundcover with all topsoil having been scoured and washed away. Obvious gullies and channels on the lots directed the full force of rainwater down the hill towards Green's land, with a silt fence designed to impede erosion on the hillside having collapsed and been overrun by the sheer volume of the water cascading down the hill from the lots. A second expert confirmed these observations in another affidavit.

The first expert went on to analyze the hydrology study relied on by Dozier and Eastland for the drainage plans for their property, which allegedly used a flawed method for calculating seepage of water into the ground in that it failed to account for rock outcroppings close to the surface of the hill, which would cause this surface to behave like a paved impervious surface once the slightest rain saturated the ground above the rock. He faulted further the removal of overburden soil from the upper lots.

When questioned in his deposition, this expert specifically testified that Dozier's development activities in developing the infrastructure (initial clear-cutting and grading, building of impervious roads, and placing of in-ground facilities) contributed to the excessive runoff onto Green's land. He also testified that Eastland's activities in then grading the lots in a nonconical manner (so as to create areas where water was allowed to collect and then funnel down the hillside), in removing overburden soils, and in creating more impervious surfaces, further contributed to the excessive runoff.

Green presented nonexpert testimony consistent with these conclusions of her expert. Three long-time neighbors of Green testified that they witnessed the June 1999 flooding of her yard, which flooding they had not seen before that time but which they had seen several times since. Green herself confirmed that such destructive flooding had not occurred prior to the development activities of Dozier and Eastland. See *DeKalb County v. McFarland*[6] (lay witnesses may testify to substantial increase in water flow). Green tendered an

---

[6] *DeKalb County v. McFarland*, 231 Ga. 649, 653 (2) (g) (203 SE2d 495) (1974).

Eastland home inspection report on one of the lots from a date just prior to Eastland selling the lot, which reflected that the lot had substantial erosion problems at that time. Finally, Green presented numerous photographs displaying the gullies and channels beginning in the upper barren backyards and continuing down the hillside. See *Ponce de Leon Condo. v. DiGirolamo*[7] (jury could rely on nonexpert testimony and photographs regarding runoff to reject expert testimony to the contrary).

The combination of (1) the lay testimony as to the excessive runoff and (2) the expert testimony that such was caused by the development and construction activities of Dozier and Eastland requires that we reverse summary judgment in favor of Dozier and that we affirm the denial of summary judgment to Eastland. See *Walker v. Johnson*.[8]

Dozier and Eastland attack the evidence submitted by Green on several fronts. First, they repeatedly cite to other evidence showing that the water runoff problems onto Green's property pre-existed any development activities on the upper property. They emphasize that this rendered incredible the four lay witnesses' testimony that the flooding had not occurred previously, and that the expert's failure to account for this pre-development flooding rendered his testimony incompetent. But on summary judgment, neither we nor the lower court may consider the credibility of witnesses, which is a matter for the jury to resolve. *Columbus Clinic v. Liss*.[9] Nor does the limited scope of the information used by the expert play a role in determining whether his testimony is competent. "[I]f the expert's opinion was based upon inadequate knowledge, this does not mandate the exclusion of the opinion but, rather, presents a jury question as to the weight which should be assigned the opinion." (Punctuation omitted.) *Layfield v. Dept. of Transp.*[10]

Second, Dozier and Eastland contend that since DeKalb County approved their development activities, they cannot be held liable for a nuisance resulting therefrom. OCGA § 41-1-1 provides otherwise, stating that "[a] nuisance is anything that causes hurt, inconvenience, or damage to another and *the fact that the act done may otherwise be lawful shall not keep it from being a nuisance*." (Emphasis supplied.) See *Sumitomo Corp.*, supra, 256 Ga. App. at 707-708 (3) (construction of detention pond in lawful manner did not prevent

[7] *Ponce de Leon Condo. v. DiGirolamo*, 238 Ga. 188, 191 (4) (232 SE2d 62) (1977).

[8] *Walker v. Johnson*, 278 Ga. App. 806, 809-810 (1) (630 SE2d 70) (2006).

[9] *Columbus Clinic v. Liss*, 252 Ga. App. 559, 563 (556 SE2d 215) (2001).

[10] *Layfield v. Dept. of Transp.*, 280 Ga. 848, 851 (1) (632 SE2d 135) (2006).

pond from becoming a nuisance when increased water flow caused hurt and inconvenience to neighboring landowners).

Third, Dozier and Eastland imply that Green must identify specific acts of negligence committed by them before liability may attach. However,

> [n]egligence is not . . . a necessary ingredient of a cause of action growing out of a nuisance. A nuisance may arise through acts and conduct done within the pale of the law and executed with due care; and yet if the result attained injures the property or individual rights of another by causing a nuisance, the maintainer must either abate the nuisance or else respond in damages.

*City of Macon v. Roy.*[11]

Fourth, Dozier argues that since nine months transpired between its development activities and the June 1999 flooding, its actions could not have caused the excessive runoff. Beyond the fact that the vagaries of weather may account for such, this is simply a matter which weighs in Dozier's favor that may be argued before the jury; it does not mandate summary judgment in its favor. See *Tensar Earth Technologies v. City of Atlanta*[12] ("Questions regarding proximate cause are undeniably a jury question and may only be determined by the courts in plain and undisputed cases.") (punctuation omitted).

2. Dozier and Eastland argue that since they had conveyed the property away and no longer owned same, Green could not sue them for continuing nuisance. The Supreme Court of Georgia has rejected this argument, specifically in the context of a landowner suing for excessive runoff:

> The fact that at the time the suit was filed the defendant had sold his property, from which the alleged cause of the injury arose, does not absolve him from being a continuing wrongdoer or from the responsibility of remedying its cause. The evidence showed that the defendant created the nuisance and that it was continuing. The trial court was authorized to restrain it and to require the defendant to cease and desist from continuing it.

---

[11] *City of Macon v. Roy*, 34 Ga. App. 603, 606 (b) (130 SE 700) (1925).
[12] *Tensar Earth Technologies v. City of Atlanta*, 267 Ga. App. 45, 50 (2) (598 SE2d 815) (2004).

*McMillen Dev. Corp.*, supra, 228 Ga. at 828 (3) (a). See *Sumitomo Corp.*, supra, 256 Ga. App. at 707 (2) (to be held liable for nuisance, defendant need only be creator of the nuisance; defendant does not have to be the current landowner). Thus, "[o]ne who creates a nuisance is liable for it even if he has sold the property containing the nuisance." *West v. CSX Transp.*[13] Accordingly, Green's action to recover damages against the alleged creators of the water-runoff nuisance was authorized, regardless of their having sold the property.

For these reasons, we reverse that portion of the order granting summary judgment to Dozier and affirm the remainder of the order.

*Judgment reversed in Case No. A07A0882. Judgment affirmed in Case No. A07A0883. Ruffin and Bernes, JJ., concur.*

DECIDED MARCH 28, 2007 —

*Baker, Donelson, Bearman, Caldwell & Berkowitz, L. Clint Crosby,* for appellant.

*Brack & Westee, Gregory H. Brack, Philip L. Westee,* for appellees.

---

[13] *West v. CSX Transp.*, 230 Ga. App. 872, 875 (3) (a) (498 SE2d 67) (1998).