A07A2160. KLEBER et al. v. CITY OF ATLANTA et al.
(661 SE2d 195)

ADAMS, Judge.

Appellants Scott Kleber and Nancy Habif purchased a home at 546 Cresthill Avenue in Atlanta and began to reside there in the summer of 1997. The home had been constructed in 1990. Within a few months, they informed Norfolk Southern Corporation and the City of Atlanta of inadequate drainage of their property during heavy rain. On May 16, 2003, almost six years later, their home incurred substantial flood damage from a mixture of stormwater and raw sewage. The owners sought relief from Norfolk and the city but were not satisfied. They filed suit on October 28, 2004, over seven years after they first became aware of the problem.

Kleber and Habif alleged that Norfolk was liable for negligence and nuisance because the flooding was caused by an inadequate drainage pipe that ran under a Norfolk railroad track with an inlet near their property line. The culvert and the railroad tracks have

been in place for decades.[1] Kleber and Habif also alleged that the city's "poor construction and maintenance of storm and/or sewer drainage system," including a connection to Norfolk's pipe that leads to a combined sewer overflow culvert, constituted negligence and a nuisance. They contend that the repeated flooding shows no sign of ending.

A special master appointed to determine the cause of the flooding found that the appellants' property lies in a small basin "at the bottom of a larger drainage basin that contributes runoff to it and through it." He found that the property floods because, although it is in good condition, "the 36-inch pipe [that runs beneath Norfolk's tracks and] that ultimately drains the basin, in which the residence is located, is not large enough to empty that basin without creating a backup or ponding of stormwater in the basin." He confirmed that the Norfolk pipe is connected to additional pipe that leads to the city's new Clear Creek combined sewer overflow culvert (CC-CSO) and that prior to the construction of the CC-CSO, Norfolk's pipe emptied into Clear Creek. The city had added a "steeper concrete pipe" to connect to the CC-CSO. In addition, the special master opined, "The City of Atlanta may have tied drainage pipes into [Norfolk's pipe] for which it was not designed to handle," although he stated in his deposition that the additional pipes drained the same basin and therefore they did not increase the overall water flow. He added that although Norfolk's pipe may have been sufficient to drain the basin decades ago when constructed, increased development had led to more impervious surfaces, and thus more runoff. Finally, he stated that the standard for sizing drainage pipe has changed over the years. "Twenty years ago it was typical to size drainage pipes for a ten-year storm. Today the standard is a 25-year storm." On February 20, 2007, the trial court granted summary judgment on the appellants' nuisance claims against both defendants based on the statute of limitation and on their claim of negligence against Norfolk, finding no duty. This appeal followed.[2]

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most

---

[1] Norfolk asserts that its tracks are owned by its primary operating subsidiary, but Norfolk does not contest responsibility. And although the section of land involved in this litigation was sold to a developer in December 2004 as a part of the "Belt Line" project, Norfolk's subsidiary retained ownership of the railroad tracks, the roadbed, and all associated railroad appurtenances.

[2] The trial court earlier dismissed appellants' negligence claim against the city based on governmental immunity, and that issue has not been appealed.

favorable to the nonmovant. *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

1. The appellants contend the court erred by finding that their nuisance claims were barred by the four-year statute of limitation. "All actions for trespass upon or damage to realty shall be brought within four years after the right of action accrues." OCGA § 9-3-30 (a). To determine when an action for nuisance "accrues," Georgia courts historically have distinguished between permanent and continuing nuisances — an action for a permanent nuisance accrues when the nuisance is created or apparent, while the period of limitation begins anew for each recurrence of a continuing nuisance. See *Shaheen v. G & G Corp.*, 230 Ga. 646, 647 (2) (198 SE2d 853) (1973). The trial court found that the nuisance was permanent in nature and therefore the limitation period began to run in 1997 — when the appellants first noticed the flooding problem, and therefore over four years had passed. We find that the trial court erred, in part because three cases from this Court have oversimplified or confused aspects of this thorny area of the law.

Confusion has long existed "as to when a nuisance, which is by its nature continuing, is considered 'permanent.' " *Cox v. Cambridge Square Towne Houses*, 239 Ga. 127 (236 SE2d 73) (1977). The Supreme Court noted that the issue inevitably arises in one of two contexts: in suits filed *within four years* of the creation of the nuisance, in order to determine "whether the plaintiff may recover prospective as well as past damages"; and in suits filed *more than four years after* the creation of the nuisance in order to determine "whether the action for damages is barred by the statute of limitation." (Emphasis omitted.) Id. In the same context as here — a dispute over whether an action was barred by the statute of limitation — the Supreme Court of Georgia in *Cox* sought to address the confusion by adopting the approach to dealing with continuing nuisances taken by the Restatement (First) of Torts, specifically, section 930 and comment "d" to section 899. Id. at 128-129.[3] The Supreme Court considered the Restatement approach "both comprehensive and workable." Id. at 128.

The Restatement provides that in cases of continuing or recurrent tortious invasions of land caused by a person's maintenance of a structure on his land or by his acts or operations thereon, the "normal remedy" "is to recover for harm flowing from the past invasions"; the injured party may bring successive actions for a series of invasions; and damages are limited to those incurred within

---

[3] Section 930 of the Restatement (Second) of Torts is essentially the same but was "reworded in the interest of clarity." See Reporter's Note.

the limitation period. Restatement (First) of Torts, Section 930, comment a. Moreover, in the case of a purely private enterprise — that is, one not affected with a public interest, and "if . . . it appears . . . the situation will continue indefinitely," the injured person has an option: he may sue only for damages occurring in the most recent four years or sue for future damages and put an end to the matter. Id. at Sections 930 (1) (a) and 899, comment d.

But if the nuisance is "incident to . . . an enterprise affected with a public interest, the operation of which as presently operated will not be enjoined," (that is to say "the invasions are caused by some substantial and relatively enduring feature of the plan of construction or from an essential method of operation"), the injured party may bring an action for past damages, the statute of limitation begins to run "when the structure is completed or the [invasive] activity is begun," and the public enterprise may insist that the injured party seek future damages, as well, in one suit. Restatement (First) of Torts, § 930 (1) (b) (i); comment b; § 899; comment d.

The Supreme Court in *Cox* applied the Restatement to a case involving a storm drain system installed by a private enterprise on its property, which, it was alleged, greatly increased the flow of water across the plaintiff's land during heavy rainfall and would do so indefinitely. *Cox*, 239 Ga. at 127, 129. Following the Restatement, the court held that the plaintiff had "the right to elect to treat the nuisance as temporary and sue for all those damages which have occurred within the past four years, or he may elect to sue for all future damages as well and put an end to the matter." Id. at 129. Also, even though the plaintiff filed suit more than four years after the system was installed, the plaintiff could elect either remedy because the four-year statute of limitation "does not preclude recovery for any damages save those which were suffered more than 4 years prior to the filing of the suit." Id.

(a) Applying *Cox* and the Restatement of Torts to this case, we must first consider whether Norfolk's activities are considered a public or private enterprise. A comment to the Restatement suggests that the railroad's activities here are public. See Restatement (First) of Torts, § 930, comment b ("A railway embankment with an inadequate culvert [which] diverts water upon near-by land."). But the railroad line in this case may not be in use and portions of the property have been sold to a developer in connection with the Belt Line project, although Norfolk still owns the tracks, roadbed and appurtenances. If Norfolk's activities in this case are considered to be a private enterprise, the rule in *Cox* directly applies, and the appellants' claims are not barred by the statute of limitations. In this case however, the result is the same even if Norfolk is considered a public enterprise, as is shown below.

(b) With regard to the City, and Norfolk if it is considered a public enterprise, we must address whether "the invasions are caused by some substantial and relatively enduring feature of the plan of construction or from an essential method of operation." This is essentially the same question addressed in well-established Georgia case law, that is, whether the nuisance "can and should be abated." (Citation and punctuation omitted.) *Shaheen v. G & G Corp.*, 230 Ga. at 648 (2). If the nuisance is not abatable, the statute of limitation began to run more than four years prior to suit, at least by the time that the appellants first became aware of the drainage problem in 1997, and therefore their nuisance claim would be barred.[4] If the nuisance is abatable, the appellants' claims are not barred; they are simply limited to damages incurred within four years of suit, plus future damages if the appellees insist.

It has been well established by the Supreme Court of Georgia and this Court that, as a matter of law, where "a municipality negligently constructs or undertakes to maintain a sewer or drainage system which causes the repeated flooding of property, a continuing, abatable nuisance is established." (Citations and emphasis omitted.) *Hibbs v. City of Riverdale*, 267 Ga. 337, 338 (478 SE2d 121) (1996), and cases cited therein; *City of Columbus v. Barngrover*, 250 Ga. App. 589, 592 (1) (a) (552 SE2d 536) (2001) ("the exercise of dominion or control over the property causing the harm is sufficient to establish nuisance liability") (citations and footnote omitted).[5] Accordingly, the appellants' claims are not barred by the statute of limitation, although they may only seek damages incurred in the most recent four years, and the appellees may require them to seek future damages as well.

---

[4] The appellants do not contend and have not presented any evidence to show that the city or Norfolk created a new nuisance within the four-year limitation period. See, e.g., *Southfund Partners v. City of Atlanta*, 221 Ga. App. 666, 667-669 (1), (3) (472 SE2d 499) (1996) (no increase in nuisance from airport in the four years prior to suit; existing nuisance – the airport – was nonabatable and barred by statute of limitation).

[5] See also *City of Columbus v. Myszka*, 246 Ga. 571, 572 (2) (272 SE2d 302) (1980) (public enterprise that caused leaking sanitary sewer and drastically enlarged volume of water due to rain water runoff from uphill development considered a continuing abatable nuisance, citing *Cox*), disapproved on other grounds, *DeKalb County v. Orwig*, 261 Ga. 137, 138 (402 SE2d 513) (1991); *City of Atlanta v. Broadnax*, 285 Ga. App. 430, 432 (1) (646 SE2d 279) (2007) (" '(w)here a municipality negligently constructs or undertakes to maintain a sewer or drainage system which causes the repeated flooding of property, a continuing, abatable nuisance is established, for which the municipality is liable' ") (quoting *City of Roswell v. Bolton*, 271 Ga. App. 1 (608 SE2d 659) (2004)). See also *Equitable Life Assurance Society &c. v. Tinsley Mill Village*, 249 Ga. 769, 771 (1) (294 SE2d 495) (1982) (involving a private enterprise, "[a] continuing nuisance may exist where water is thrown upon adjoining land because of improperly constructed culverts, and an action may be brought against the current owner of the property for maintaining a nuisance where the culverts were constructed by a predecessor") (citation omitted).

(c) The trial court unfortunately relied on cases from this Court that state propositions of law that are inconsistent with *Cox*, the Restatement, and the cases that hold that the maintenance of a sewer or drainage system that causes repeated flooding is a continuing abatable nuisance. The court relied on *Walker v. Johnson*, 278 Ga. App. 806 (630 SE2d 70) (2006), and *City of Macon v. Macrive Constr.*, 241 Ga. App. 396, 397 (525 SE2d 418) (1999), which in turn relied on *Macko v. City of Lawrenceville*, 231 Ga. App. 671 (499 SE2d 707) (1998) ("*Macko II*"). These cases have private enterprise defendants, and therefore they are relevant to Division (1) (a) above.

In *Macko II*, Appalachee Enterprises, Inc., a private enterprise, developed a subdivision, and the plaintiffs purchased a lot in the subdivision that suffered recurrent flooding during heavy rains. *Macko II*, 231 Ga. App. at 671. They sued more than five years after their property first flooded and alleged that Appalachee had negligently installed inadequate drainage pipes and curbs in the subdivision drainage system. Id. at 671, 674 (3). In an appeal of an earlier related case, it had been established that the City of Lawrenceville never accepted responsibility for and did not exercise any control over the drainage system. Id. at 672.[6] It follows that Appalachee retained control of the drainage system that allegedly caused flooding on the plaintiff's property.

In *Macko II*, this Court held that the plaintiffs' claim of nuisance arising from repeated flooding caused by an inadequate drainage system was barred by the four-year statute of limitation because it was filed more than four years after "any nuisance created by the allegedly inadequate system was complete and apparent." *Macko II*, 231 Ga. App. at 674 (3). Yet under *Cox* and the Restatement, a plaintiff in that situation is not barred:

> Since it clearly appears that this situation [(a drainage system installed by a private land owner, as in *Cox*)] will continue indefinitely . . . , the [plaintiff] has the right to elect to treat the nuisance as temporary and sue for all those damages which have occurred within the past four years. . . .

(Citation and punctuation omitted.) *Cox*, 239 Ga. at 129.

The facts are similar in *Walker*. In that case, the plaintiffs purchased a lot in a subdivision solely developed by Keith Johnson. *Walker*, 278 Ga. App. at 806. Johnson purchased the land and, among

---

[6] See also *City of Lawrenceville v. Macko*, 211 Ga. App. 312, 316 (3) (439 SE2d 95) (1993) ("*Macko I*"), overruled in part on other grounds, *Clive v. Gregory*, 280 Ga. App. 836, 839 (1) (635 SE2d 188) (2006).

other things, caused the construction of a drainage system, sewer system and water system in the subdivision. Id. The plaintiffs purchased a house in the subdivision from a previous owner and soon noticed that their property was "subject to flooding." Id. at 806-807. The plaintiffs brought suit and alleged, in part, that certain water collection and control structures required by the subdivision drainage, sewer and water plans had never been built on the sides of the plaintiffs' property and on other property in the subdivision. Id. at 808-809 (1). Because the plaintiffs filed suit more than four years after they first noticed the water problem, the trial court held that their claim against Johnson for construction of the drainage system was barred by the statute of limitation, and this Court affirmed. But, again, under *Cox*, the plaintiffs' nuisance claim for recurrent flooding should not have been barred.

The case of *Macrive* is slightly different, but it relies on the unfortunate proposition of law found in *Macko II*. In *Macrive*, the drainage ditch that caused repeated flooding was apparently located solely on the two plaintiffs' properties. *Macrive*, 241 Ga. App. at 396. The defendant had simply installed the drainage pipe and ditch on those properties, not on its own property. Id. Furthermore, the situation was probably misidentified as a nuisance because there is no indication that the flooding came from other property. Perhaps recognizing these problems, this Court held, "Assuming for the sake of argument that this was a nuisance, the action was barred by the four-year statute of limitation." (Footnote omitted.) Id. at 397. The opinion then applied the erroneous law in *Macko II*.

Based on the above reasoning, *Macko II* and *Walker* are hereby disapproved on the proposition that a claim of nuisance arising from repeated flooding caused by an inadequate drainage system owned or controlled by the defendant is barred by the four-year statute of limitation if it is filed more than four years after any nuisance created by the allegedly inadequate system was "complete and apparent." The case of *Macrive* should not be cited for that specific proposition of law. To the extent one can read into *Macko* and *Walker* a finding that the defendant in nuisance had divested himself of the relevant drainage system, those opinions stand unchanged.[7]

(d) With regard to the city's argument that it neither created nor maintained the nuisance, the City has admitted that it installed a 36-inch pipe to connect the Norfolk pipe to the CC-CSO facility. Since the special master opined that the nuisance results from the fact that

---

[7] This opinion does not address or consider, nor does it implicate, the issue of whether a person who created continuing or recurrent tortious invasions may successfully assert a statute of limitation defense based on the time elapsed following dispossession of the offending property. We leave that to another day. Nor does the opinion address any tolling issues.

a 36-inch pipe is too small, we find that summary judgment was not proper on this ground either.

2. Kleber and Habif also contend the trial court erred by concluding that Norfolk had no duty to replace or repair the pipe running under its tracks and that they could not recover because they had not presented evidence that the railroad had acted to increase the natural flow of rainwater onto their property. The court relied on *Goldsmith v. Elsas, May & Co.*, 53 Ga. 186 (1874), for that proposition of law. We agree with appellants.

In this case, there is an issue of fact as to whether the tracks were built on an embankment that, together with the culvert, altered the natural flow of water. Following his investigation including his personal observation of the lay of the land, the special master opined that before the railroad's existence, the water flowed freely through the basin in which the appellees' property is located and down to Clear Creek, which used to flow through Piedmont Park; a representative of Norfolk viewed the properties and concluded otherwise. If a railroad company obstructs or alters the natural drainage and flow of water by constructing a ditch or drain, it "owes a duty to the owner of the [adjacent] land not to permit the ditch to fill up and become obstructed so as to turn the water back upon the adjacent land." (Citation and punctuation omitted.) *West v. CSX Transp.*, 230 Ga. App. 872, 875 (3) (a) (498 SE2d 67) (1998). See also *Equitable Life Assurance Society &c. v. Tinsley Mill Village*, 249 Ga. 769 (294 SE2d 495) (1982).

*Judgment reversed. Barnes, C. J., Blackburn, P. J., Ruffin, Ellington and Bernes, JJ., concur. Andrews, P. J., Smith, P. J., Miller, Phipps and Mikell, JJ., concur specially. Johnson, P. J., concurs in judgment only.*

SMITH, Presiding Judge, concurring specially.

While I concur in the result, I cannot concur with all that is written in the majority opinion. Our opinions in *Walker v. Johnson*, 278 Ga. App. 806 (630 SE2d 70) (2006), *City of Macon v. Macrive Constr.*, 241 Ga. App. 396 (525 SE2d 418) (1999), and *Macko v. City of Lawrenceville*, 231 Ga. App. 671 (499 SE2d 707) (1998), should be limited to the facts presented but not disapproved. I write separately to clarify that the majority opinion should *not* be interpreted to hold that the statute of limitation will be *tolled in perpetuity* for any individual or entity that created a continuing nuisance, regardless of how much time has elapsed since that entity owned, controlled, or maintained the property from which the nuisance emanates. This is not the law, and such a result is not required by the case before us.

154

> Where a nuisance is not permanent in its character, but is one *which can and should be abated* by the person erecting or maintaining it, every continuance of the nuisance is a fresh nuisance for which a fresh action will lie. This action accrues at the time of such continuance, and against it the statute of limitations runs only from the time of such accrual.

(Citations omitted; emphasis supplied.) *City of Gainesville v. Waters*, 258 Ga. App. 555, 558 (3) (574 SE2d 638) (2002). On the other hand, a nuisance, even one that continues over time, is permanent if it cannot and should not be abated by the person erecting or maintaining it. In circumstances, such as those in *Walker*, *Macrive*, or *Macko*, when more than four years have passed since the nuisance first became apparent *and* the entity that erected or maintained the nuisance no longer owns, maintains, or controls the property, this court has held that the nuisance is permanent and claims are barred by the statute of limitation.

In contrast to such cases, because public entities almost always continue to maintain or control the nuisance, our courts find that the nuisance is abatable with no in-depth analysis of whether the nuisance "can and should be abated," because there is no statute of limitation issue. See, e.g., *Hibbs v. City of Riverdale*, 267 Ga. 337, 338 (478 SE2d 121) (1996). With regard to a private entity, however, whether the nuisance can or should be abated turns upon whether the private entity owned or controlled the property within the period of the statute of limitation. This is directly demonstrated in *Walker*, supra, in which we held that the statute of limitation had run with respect to a developer's alleged failure to construct an adequate drainage system for the subdivision more than four years before suit was filed. We also held, however, that the statute would not bar a separate continuing nuisance claim with respect to the clearing of land that the developer continued to own *and* that allegedly increased the flooding problem on the plaintiffs' land. Id. at 809-810 (1).

The majority overlooks this important distinction. It begins by stating a three-stage analysis based on *Cox v. Cambridge Square Towne Houses*, 239 Ga. 127 (236 SE2d 73) (1977), a case involving a nuisance created and maintained by a private rather than a public enterprise. But the majority does not complete the analysis. First, it considers whether the nuisance emanates from a public or private source and finds that it is public. Next, it considers whether "the nuisance can and should be abated," considering that as a question of whether the alleged nuisance is an essential or integral part of the public purpose. At that point, however, the majority abandons

further analysis and holds that a municipality's negligent construction of a drainage system that repeatedly floods is a continuing, abatable nuisance, but does so without considering the legal standard for when a "nuisance can and should be abated."

While disapproving the cases, the majority draws a distinction between cases involving public entities, such as the one before us, and private entities, such as those in the three cases the majority seeks to limit or disapprove. But *Macko* also has been distinguished in the past because it involves a *permanent* rather than an abatable nuisance. See *Waters*, supra, 258 Ga. App. at 559 (3). Rather than analyzing the nature or quality of the nuisance itself, as the majority does here, the analysis in *Macko* turns on whether the nuisance is in fact abatable — i.e., whether the defendant has the power and ability to cure the problem.

In *Macko*, the alleged nuisance was created by the developer of the subdivision when the system was constructed, not the current owners of the adjoining property, who were also sued, along with the city, over four years after flooding became apparent. *Macrive*, which relies on *Macko*, presents remarkably similar facts. The plaintiff homeowners sued Macrive, who had originally installed the drainage system on their land, over four years after plaintiffs purchased their lots and after flooding began. In fact, the City of Macon had abated the nuisance itself and joined the suit, seeking to recover the costs of rebuilding the drainage system from the contractor. *Macrive*, supra, 241 Ga. App. at 396-397. Compare *Waters*, supra, in which the defendant city "does not dispute that it exercised dominion and control over the pipe or drainage system," 258 Ga. App. at 557 (1), and thus remained capable of abating the nuisance. Consequently, the result in each of these cases was proper and *not* inconsistent with the Georgia Supreme Court's opinion in *Cox*. *Cox* addressed the statute of limitation with regard to a private entity that still owned the property. The nuisance, therefore, could be abated by the entity.

In the process of limiting *Walker*, *Macrive*, and *Macko*, we should take care to presume that each was correctly decided based upon the facts before us and not assume facts not in the opinion in order to conclude that it might be wrongly decided. For example, the majority states that "it follows" that the developer in *Macko* retained control of the nuisance because the Mackos *failed to prove* that the city had an obligation to abate it. But this does not show that the developer retained control — the individual landowners may have had control, as in *Macrive*, supra, or the city may have assumed control but the Mackos failed to prove their case. "[W]e will not presume error where the record is silent." (Citation, punctuation and footnote omitted.) *Jowers v. State*, 272 Ga. App. 614, 619 (3) (c) (613 SE2d 14) (2005).

156

In the case before us, the public entity and Norfolk Southern still have control over the property and the nuisance "can and should be abated by the person erecting or maintaining it." (Citations omitted.) *Waters*, supra, 258 Ga. App. at 558 (3). This appears to be an adequate basis for distinguishing these cases without overruling them. The majority does not fully address this concept, since it concentrates on whether the nuisance is an integral and necessary part of the operation complained of. But whether a nuisance "can and should be abated by" a person depends not merely on whether the abatement is *advisable* from a public policy or necessity standpoint ("should be"), but also on whether the defendant still controls the property and thus has the *ability* to go on the land to abate the nuisance itself ("can"). The majority does not consider this necessary step in determining the application of the statute of limitation.

I concur that all three cases should be limited to their facts to the extent that they could be interpreted to find that the four-year statute of limitation bars any cause of action against a public *or* private entity that maintained, owned, or controlled a nuisance within four years of the filing of a lawsuit. Compare *Rowe v. Steve Allen & Assoc.*, 197 Ga. App. 452, 453 (398 SE2d 717) (1990). This limitation, of course, would have no effect on the general rule that an entity creating or maintaining a nuisance continues to be liable *within the statutory limitation period* even if it relinquishes ownership or control of the nuisance during that time. See *McMillen Dev. Corp. v. Bull*, 228 Ga. 826, 828 (3) (a) (188 SE2d 491) (1972) (statute of limitation not at issue).

The majority opinion should not be interpreted to hold that the statute of limitation will *never* expire in ongoing nuisance cases involving drainage issues, even if more than four years have passed since the defendant had any ability to correct the problem. I do not believe this would be a proper application of the law. As the majority states, this is a dense, confusing area of law, and we should not further confuse it. Construing *Macko* and *Walker* as the majority proposes is unnecessary and creates confusion because they stand for a completely different proposition of law which is not at issue in the case before us.

In sum, we should take care to guard against the use of strained constructions when overruling multiple decisions of this court. Doing otherwise undermines confidence in the legal system and the precedential value of the decisions of this court.

For these reasons, I specially concur in the result.

I am authorized to state that Presiding Judge Andrews, Judge Miller, Judge Phipps, and Judge Mikell join in this special concurrence.

DECIDED MARCH 28, 2008 —
RECONSIDERATIONS DENIED APRIL 14, 2008 ▮▮▮▮

*Gaslowitz & Frankel, Craig M. Frankel, Lisa C. Lambert*, for appellants.

*Weissman, Nowack, Curry & Wilco, William C. Thompson, Laura S. Morris, Linda K. DiSantis, Laura Sauriol-Broward*, for appellees.