## A01A1147. COLUMBUS CLINIC, P.C. v. LISS.
### (556 SE2d 215)

SMITH, Presiding Judge.

In this action brought by the Columbus Clinic, P.C., against Dr. Jonathan Liss, a physician and former employee/shareholder, the clinic appeals from the grant of partial summary judgment to Liss on the issue of the enforceability of a noncompete covenant in an employment agreement.[1] The trial court found that the clinic breached the employment agreement when it terminated Liss and then failed to compensate him as required by the agreement; the trial court therefore concluded that the clinic was estopped from enforcing the noncompete covenant.[2] We find that genuine issues of material fact remain regarding whether the clinic terminated Liss or

---

[1] Other issues, including whether the clinic waived payment by Liss under a stock subscription agreement and whether Liss is entitled to recover additional expenses under his counterclaim, remain pending below.

[2] The trial court denied Liss's motion for partial summary judgment on the issue raised in his counterclaim of whether he was entitled to additional compensation for the additional expenses necessitated by his precipitous departure. Liss has not, however, filed a cross-appeal.

simply shortened his active employment period after Liss resigned. We therefore reverse the trial court's grant of partial summary judgment on this issue.

The record shows that Liss and the clinic executed the employment agreement in issue on July 30, 1996. Under paragraph 15 of the agreement, the clinic had the right to terminate Liss's employment either with or without cause. If the clinic terminated Liss without cause, 60 days notice was required. If the clinic were to terminate Liss for cause, no notice was required, and the effective termination date would be the date of delivery of the written notice. Liss had the right to terminate the agreement "at any time upon thirty (30) days written notice to Employer and, except as otherwise provided in this Section 15, Employer shall be obligated only to continue to pay Employee his compensation up to the date of termination." In addition, the agreement provided:

Following any notice of termination of employment hereunder, whether given by Employer or Employee, Employee shall fully cooperate with Employer in all matters relating to the winding up of Employee's pending work on behalf of Employer and the orderly transfer of such work to the other professional employees of Employer. On or after the giving of notice of termination hereunder and during any notice period, Employer shall be entitled to such full-time or part-time services of Employee as Employer may reasonably require and Employer shall specifically have the right to terminate the active services of Employee at the time such notice is given and to pay to Employee the compensation due to him under Section 4 of this Agreement for the duration of the notice period.

Paragraph 21 of the agreement provides: "Any and all notices required or permitted to be given under this Agreement will be sufficient if furnished in writing, sent by registered or certified mail to his last known residence in the case of Employee or to its principal office in Columbus, Georgia, in the case of Employer." The agreement contains no severability clause.

The record shows that on October 5, 1998, Liss left a handwritten letter on the desk of the medical director, which stated:

Pursuant to our conversation of 10-2-98 I offer my resignation to the Columbus Clinic P.C. I will be pleased to meet with you regarding a negotiated separation date but feel midnight 1-1-99 is reasonable. I immediately resign from all clinic committees & officer position so that no conflict of interest is inferred.

At its October 15, 1998 meeting, the clinic's board of directors accepted Liss's resignation. Shortly after that, the clinic's medical director and its administrator met with Liss and informed him that the clinic was taking Liss's October 5 letter as a letter of resignation, that they were allowing 30 days notice, and that November 5, 1998, would be his last day at the clinic. The medical director testified on his deposition that the clinic paid Liss through the 30-day notice period. Liss then opened his practice elsewhere in Columbus effective November 6, 1998.

Liss testified on his deposition that in a conversation prior to his letter, the clinic's administrator asked him to give "plenty of notice" of his leaving the clinic, so that the clinic would not be "caught short." Liss testified that he offered the letter three months in advance of the date he intended to leave for just that reason, but that it was not an "official resignation," since he believed that such resignation notice was required to be delivered by registered or certified mail. He maintained that the clinic had "fired" him when he was told to leave on November 5, 1998, and that the clinic had done so without the notice period required by the agreement.

Dr. Richard Wood, who was the medical director of the clinic at the time in issue, testified on his deposition that he had several meetings with Liss concerning the departure of Liss from the clinic, at some of which Mr. Alexander, the clinic's administrator, was also present. He testified that they tried to persuade Liss to stay at the clinic. When it became obvious that they could not work things out, Wood and Alexander determined that Liss's continued presence at the clinic "was going to be disruptive for many reasons." At that point, Wood and Alexander decided to "exercise the thirty day clause in our contract" and inform Liss that he must leave the clinic by November 5, 1998. Wood explained that this date was determined because Liss's October 5 letter was considered a letter of resignation, and "to me that's, I mean he was terminating his employment with the Columbus Clinic." According to Wood's understanding of the employment agreement, the clinic could "then elect to only accept thirty days of resignation, and we did. So October 5th to November 5th."

It is therefore apparent from the deposition testimony that the parties viewed the October 5 letter very differently. The question of whether the October 5 letter was an "official" letter notifying the clinic that Liss was terminating his employment is crucial. If it was such an "official" termination notice, it "triggered" the clinic's right to choose to have the active service of Liss for only 30 days and to pay him for only those 30 days. If it was not an "official" termination letter, as argued by Liss, but only his attempt to be "kind and decent" to the clinic and offer as much warning as he could give, so that the

clinic could make appropriate plans, the clinic had no right to "fire" Liss with less than 30 days notice unless it was for cause.

This question arises partly because the employment contract itself is ambiguous. The notice provision in the agreement states that all notices "will be sufficient" if they are written and are sent by registered or certified mail. This is clear and unambiguous as to notices sent in that manner. The agreement does not state, however, whether these conditions are *necessary* as well as sufficient. The record does not reflect whether the trial court applied the rules of contract interpretation to resolve this ambiguity or even if the trial court found there was an ambiguity. Indeed, the court appears to have disregarded the October 5 letter entirely. See generally *Deep Six v. Abernathy*, 246 Ga. App. 71, 73 (2) (538 SE2d 886) (2000). After applying the rules of contract construction, we find that the ambiguity remains. A jury will have to decide this issue.

Further, we get no help from the letter itself, which also is ambiguous. While it does "offer" Liss's "resignation," it also appears to state Liss's intention not to resign immediately, or within 30 days, but approximately 90 days in the future, on a date certain, unless after negotiation some other date was found suitable. The ambiguous nature of the resignation itself is contrasted with Liss's statement that he was "immediately" resigning from committees and his officer position to avoid the appearance of a conflict of interest. In addition, the letter was simply laid on the desk of Dr. Wood, the medical director, rather than being mailed by certified or registered mail.

> On appeal, we review the trial court's grant of summary judgment de novo to determine whether the evidence of record, viewed in a light most favorable to the nonmoving party, demonstrates any genuine issue of material fact. Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

(Footnotes omitted.) *Preferred Real Estate Equities v. Housing Systems*, 248 Ga. App. 745 (548 SE2d 646) (2001). Here, a genuine issue of material fact exists as to whether Liss's October 5 letter was a notice of termination of employment that "triggered" other aspects of the employment agreement. Liss testified that he did not intend it to be; he intended to send an "official" notice by certified or registered mail 30 days before his separation date. The clinic's medical director testified that he understood that the October 5 letter was a notice of termination of employment and acted accordingly. "The intention with which an act itself is done is peculiarly a question for the jury." *Johns v. Ridley*, 245 Ga. App. 710, 712 (1) (537 SE2d 746) (2000).

A question of credibility cannot be resolved on summary judgment. In a summary judgment case this court cannot consider the credibility of a witness . . . concerning his state of mind or intention; and where his statement in relation thereto conflicts with other strong evidence to the contrary, a jury must decide the credibility question and resolve any remaining conflict.

(Citations and punctuation omitted.) *Tri-Cities Hosp. Auth. v. Sheats*, 156 Ga. App. 28, 32 (273 SE2d 903) (1980), aff'd, 247 Ga. 713 (279 SE2d 210) (1981).

Because issues remain for jury resolution as to both the contract and the meaning of the October 5 letter, the trial court erred in granting partial summary judgment to Liss.

*Judgment reversed. Barnes and Phipps, JJ., concur.*

DECIDED NOVEMBER 6, 2001 —
RECONSIDERATION DENIED NOVEMBER 27, 2001.

*Denney, Pease, Allison & Kirk, Ray L. Allison, Marchetti & Lomax, Robert R. Lomax*, for appellant.

*Hatcher, Stubbs, Land, Hollis & Rothschild, James E. Humes II*, for appellee.

