## A04A1410. NATIONWIDE LOGISTICS, INC. v. CONDOR TRANSPORT, INC.
### (606 SE2d 319)

BARNES, Judge.

Condor Transport, Inc. ("Condor") sued Nationwide Logistics, Inc. ("Nationwide"), for breach of contract alleging that Nationwide had failed to pay $46,791.48 in freight charges. Nationwide answered and counterclaimed seeking indemnification for the loss of a trailer of breakfast cereal valued at $57,919.69 that was transported by Condor. Nationwide also filed a third-party complaint against Freight Handlers, Inc., the company Condor contracted with for trailer handling services, but subsequently voluntarily dismissed this complaint against Freight Handlers without prejudice. The parties filed cross-motions for summary judgment, and following a hearing on the motions, the trial court granted summary judgment in favor of Condor, and Nationwide now appeals. We discern no error, and affirm.

A trial court properly grants summary judgment when there is no issue of material fact and the record demonstrates that the moving party is entitled to judgment as a matter of law. See *Columbus Clinic v. Liss*, 252 Ga. App. 559, 562 (556 SE2d 215) (2001). "On appeal, we review the trial court's grant of summary judgment de novo to determine whether the evidence of record, viewed in a light most favorable to the nonmoving party, demonstrates any genuine issue of material fact." (Citation omitted.) Id.

So viewed, the record reflects that Nationwide is a "third-party logistics provider" and freight broker. In its function as a freight broker it hires third-party carriers to transport goods for other companies. Food Lion is one of the companies that used Nationwide to broker the delivery of loads from its vendors to its distribution centers.

Condor is an interstate contract and common carrier, and had contracted with Nationwide since 1999 as a third-party carrier. Condor, per the "Motor Transportation Contract" with Nationwide,

provided transportation services for Nationwide on behalf of Nationwide's consignors, including Food Lion. On March 24, 2000, Condor picked up a load of cereal from a Kellogg facility in Fairburn, Georgia, and transported it to a facility in Florida. Food Lion was the consignor. Upon arrival in Florida, Condor left the trailer of cereal at the designated storage yard that was operated by Freight Handlers, and put the paperwork in a drop box. The trailer was subsequently stolen, and although it was later recovered, the cereal, valued at $57,919.69, was missing. When Nationwide inquired about the missing cargo, Condor informed it that the cereal had been dropped off at the designated location, and that the bill of lading was left in a drop box at the facility. The bill of lading was not located, and when personnel could not find the cargo, Nationwide determined that the load "had not been delivered or was stolen," and planned to file a claim against Condor. Although Nationwide's policy was to "file the claim with the carrier immediately," it did not file a claim for the missing goods until almost seven months later, on October 19, 2000. In the interim, Nationwide paid Food Lion on its claim for the stolen cereal.

In the months following the theft, Condor continued to transport goods for Nationwide until November 27, 2000, and accrued freight charges of $46,791.48. Nationwide, however, refused to pay Condor the freight charges because of the $57,919.69 claim for the loss of the cereal. Condor filed this action to recover the freight bills, alleging breach of contract, breach of the property brokers' regulations, and money had and received. Nationwide answered, denying that it owed the charges, and asserting a counterclaim for the value of the stolen or lost cereal.

In granting summary judgment to Condor, the trial court found that the brokerage contract,

> imposes two unambiguous conditions precedent on Nationwide's right to recover indemnity from Condor. First, [Nationwide] must submit a written claim to Condor within ninety (90) days of the loss, damage or delay involving cargo in order to preserve its right to recover indemnity. Second, Nationwide may offset a cargo loss claim against freight charges owed to Condor only if the cargo claim has not been resolved within ninety (90) days of the date Nationwide submits its written claim to Condor and if Nationwide provides written notice to Condor by certified mail of its intent to use the cargo loss claim to offset the freight charges owed to Condor.

Nationwide failed to do either, and the court held that "[u]nder Missouri law, failure of a condition precedent prevents the non-performing party from enforcing the terms of an agreement." Thus, Nationwide's claim for indemnity failed as a matter of law.

The construction of a written contract is generally a matter for the trial court to decide as a matter of law. *Peachtree on Peachtree Investors v. Reed Drug Co.*, 251 Ga. 692, 694 (1) (308 SE2d 825) (1983). On appeal of such contract construction by the trial court, we conduct a de novo review of the legal issues. *Tachdjian v. Phillips*, 256 Ga. App. 166, 168 (568 SE2d 64) (2002).

1. Nationwide first argues that the trial court erred in granting summary judgment because the evidence demonstrates that Condor failed to deliver the cereal and was therefore liable for the loss.

Nationwide brought its counterclaim for indemnification and breach of contract pursuant to the terms of the brokerage contract. The contract held in pertinent part that,

> [Condor] agrees to indemnify and hold [Nationwide] harmless from all losses, damages, claims, or liabilities (including attorney's fees) that arise from the performance of transportation services hereunder by [Condor], unless such losses, etc., arise exclusively as a result of the negligence of [Nationwide].

Condor's liability for the loss is wholly irrelevant to whether Nationwide would be indemnified. The contract only stipulates that liability could not exclusively lie with Nationwide, and here, it is undisputed that Nationwide had nothing to do with the loss. Condor had a duty to indemnify regardless of its liability, and accordingly, the trial court did not err for failing to make a finding on the issue of Condor's liability. See generally *Edwards Bros., Inc. v. Overdrive Logistics*, 260 Ga. App. 222 (581 SE2d 570) (2003).

2. Nationwide also argues that the trial court erred in finding that it had failed to file a timely claim for the lost cereal. We do not agree.

The contract stipulated that,

> [i]t is further understood and agreed that all commodities transported under the terms and in accordance with this Agreement shall be transported in accordance with the rates, charges, rules and regulations as set out in the Schedule of Actual Rates and Charges (the "Schedule") applying to the commodities herein, attached hereto as Exhibit "A" and incorporated herein by reference, and all supplements thereto and reissues thereof.

Under the terms of the Schedule, "[a] claim for loss, damage, or delay to cargo totaling in excess of $100.00 will not be voluntarily paid by [Condor], unless filed in writing, as provided in subparagraph (b) below, with carrier, *within 90 days*." (Emphasis supplied.)

The Schedule also provided that, within 30 days of the receipt of a written claim Condor must acknowledge receipt of the claim and request any additional documentation needed for its investigation, and must then within 30 days, either pay the claim, deny payment, or make a firm compromise offer on the claim.

The Schedule further stipulated that

[i]f [Condor] fails to comply with this disposition or reporting requirements, however, Nationwide Logistics, Inc. is entitled to deduct from the amount of any outstanding freight bills payable to [Condor] the full amount of such claim. In the event any claim is outstanding or unresolved for more than 90 days after its filing, Nationwide Logistics, Inc. is authorized to deduct from the amount of any outstanding freight bills payable to [Condor] the full amount of such claim.

Nationwide does not argue that it filed within the 90-day contract period, it instead argues that it did not have standing to file the claim until after Food Lion had filed its claim for the loss against Nationwide.

The contract specifically provided that it was to be construed under Missouri law, and in the absence of contrary public policy, our courts normally will enforce a contractual choice of law provision, as the parties by contract may stipulate that the laws of another jurisdiction will govern the transaction. *Carr v. Kupfer*, 250 Ga. 106, 107 (1) (296 SE2d 560) (1982).

Under Missouri law,

[d]etermining the intention of the parties and giving effect to that intention is the prime principle of contract interpretation. The contract is read as a whole to determine the parties' intent. All terms are given their plain, ordinary, and usual meanings, and terms should be construed to avoid rendering other terms meaningless. Intent is not to be determined merely by looking at isolated provisions not considered in the context of the entire agreement. Where a contract dispute is based on the construction of a contract, rather than a factual dispute as to what was agreed upon, the court must construe the contract. If it is clear and unambiguous as a matter of law, this construction is limited to the "four corners" of the instrument and parol evidence as to its meaning

cannot be utilized.

(Citations omitted.) *Spirtas Co. v. Div. of Design & Constr.*, 131 SW3d 411, 416 (Mo. App. 2004).

Moreover,

> it is not within the province of the court to alter a contract by construction, or to make a new contract for the parties. . . . [A] court's duty is confined to the interpretation of the contract which the parties have made for themselves, without regard to its wisdom or its folly, and that a court may not read into a contract words which the contract does not contain.

(Citations and punctuation omitted.) *Svc. Vending Co. v. Wal-Mart Stores*, 93 SW3d 764, 771 (Mo. App. 2002) (on motion for rehearing and motion for transfer).

The language in the contract between Condor and Nationwide is clear. The contract provided that claims must be submitted in writing within 90 days of the loss. There is no contingency providing that the notice provision is effective only upon the filing of a claim by a consignor. The contract with Food Lion contained no such provision, an oversight that Nationwide was in the position to correct, as the drafter of the contract. By signing the contract, Nationwide accepted that it would be bound by the notice provision in order to file a claim. Therefore, we find no merit in the enumeration.

3. Finally, Nationwide argues that the contract provision controlling indemnification is clear and unambiguous and does not provide for any preconditions to Condor's duty to indemnify. We do not agree. The contract stipulates that

> it is further understood and agreed that all commodities transported under the terms and in accordance with this Agreement shall be transported in accordance with the rates, charges, rules and regulations as set out in the Schedule of the Actual Rates and Charges applying to the commodities herein, attached hereto as Exhibit "A" and incorporated herein by reference, and all supplements thereto and reissues thereof.

And as noted previously, under the terms of the Schedule, "[a] claim for loss, damage, or delay to cargo totaling in excess of $100.00 will not be voluntarily paid by [Condor], unless filed in writing, as provided in subparagraph (b) below, with carrier, *within 90 days.*" (Emphasis supplied.)

We agree with the trial court's conclusion that "the failure of the condition precedent by Nationwide prevents it from enforcing the indemnification provision in the contract, and its claim for indemnity therefore fails as a matter of law."

A condition precedent is something that it is agreed must happen or be performed before a right can accrue to enforce the main action. It is one without the performance of which the contract, although in form executed and delivered by the parties, cannot be enforced. In other words, if a contract contains a condition precedent, the condition must occur or be performed before the contract takes effect and is enforceable. If the condition does not occur or is not performed the other party may withdraw, but in order to escape liability the withdrawing party must affirmatively show that the withdrawal from the contract occurred because of the condition's failure.

(Citations and punctuation omitted.) *CIT Group/Equip. Financing v. Integrated Financial Svcs.*, 910 SW2d 722, 729 (III) (B) (Mo. App. 1995).

Condor has met this burden, and accordingly, the trial court did not err in its grant of summary judgment.

*Judgment affirmed. Blackburn, P. J., and Mikell, J., concur.*

---

DECIDED NOVEMBER 1, 2004.

*Bruce E. Mitchell*, for appellant.
*Robert E. Spears, Jr.*, for appellee.