**In re CITRUS TOWER BOULEVARD IMAGING CENTER, LLC,**
Debtor.

**Citrus Tower Boulevard Imaging Center, LLC, Plaintiff,**

v.

**KEY EQUIPMENT FINANCE, INC., Defendant.**

**Bankruptcy No. 11–70284–MGD.**
**Adversary No. 14–05105.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Signed Sept. 8, 2014.

Filed and Entered Sept. 9, 2014.

Anna Mari Humnicky, Garrett H. Nye, Gus H. Small, Cohen Pollock Merlin & Small, P.C., Atlanta, GA, for Plaintiff.

John F. Isbell, Garrett A. Nail, Thompson Hine LLP, Atlanta, GA, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

MARY GRACE DIEHL, Bankruptcy Judge.

This is an action brought by Debtor against its lender, Key Equipment Finance, Inc. ("Key"). Debtor was formed to build out an imaging center that would be leased to participating physicians. Debtor and Key entered into a Master Lease and Progress Payment Loan and Security Agreement in January 2010 to finance the build-out and to purchase nec-essary equipment. Key disbursed funds under the Progress Payment Loan based upon Debtor's written requests. Debtor alleges that Key distributed approximately $3.9 million without sufficient documentation. The parties later entered into a Forbearance Agreement in April of 2011 when Debtor defaulted under the Lease Documents.[1] Debtor filed its Chapter 11 case on July 12, 2011 and later shut down the imaging center and liquidated its assets.

This action is before the Court on Key's Motion to Dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), which is made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012. Key's Motion to Dismiss applies to all counts (Docket No. 4). Debtor filed a response and Key filed a reply (Docket Nos. 10 & 11). Debtor filed a sur-reply brief, which Key moved to disregard (Docket Nos. 15 & 18). Based upon Debtor's failure to seek leave to file the sur-reply brief, the Court has exercised its discretion pursuant to Bankruptcy Local Rule 7007–1(h) to limit its consideration to the response and reply.[2]

Following the July 31, 2014 status conference held in connection with a hearing on a matter in Debtor's Chapter 11 case, the parties filed a joint stipulation in this adversary proceeding and also filed court documents that had been entered in the pending Northern District of Georgia case: *Key Equipment Finance, Inc. v. Overend et al.,* 1:12–CV–2473–CAP. (Docket No. 19). At the status conference, the Court gave the parties permission to file supplemental briefs regarding the relevancy of the District Court's Order to Key's pending Motion to Dismiss in this Court. (Docket Nos. 19–22). Based upon the pos-

---

1. The Lease Documents include the Master Lease, Security Agreement and the Personal Guaranties of Franklin Trell and George Overend.

2. The Reply brief filed by Key does not raise any new facts or argument and therefore, no further briefing is warranted.

ture of the District Court case and the distinct parties (guarantors instead of Debtor), there is no basis to rely on the District Court's Order Partially Granting Key's Motion for Summary Judgment. Further, there is a pending motion to reconsider the District Court's Summary Judgment Order. Key has also filed a Motion for Final Judgment as to certain counts against Mr. Overend under Rule 54(b), which also remains pending. With no final judgment in the District Court case, there is no application to this action.

In this action, Debtor brings a multi-count complaint against Key premised on allegations that Key failed to provide proper oversight of the written draw requests made by Debtor such that Debtor's member, Franklin Trell, and employee, Cynthia Vinson, and their related entities were able to allegedly fraudulently obtain and/or misappropriate the funds disbursed by Key. Debtor brought this action against Key, asserting the following claims:

    I.   Equitable Disallowance/Reduction of Claim

    II.   Equitable Subordination of Claim

    III.   Breach of Contract

    IV.   Negligence

    V.   Gross Negligence

    VI.   Lender Liability

    VII.   Objection to Proof of Claim

    VIII.   Avoidance and Recovery of Preference

This is a core proceeding as to which the bankruptcy court has authority to issue an order and judgment. Jurisdiction and venue are proper in this action. 28 U.S.C. §§ 157(b), 1334(b).

For the reasons set forth below, Key's Motion to Dismiss is **GRANTED**. Debtor's objection to claim remains and Key is directed to file an amended claim.[3]

**3.** Key has filed a $5.56 million claim and concedes that the proof of claim, as filed, does

## I.  Motion to Dismiss Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible claim for relief." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009); FED.R.CIV.P. 12(b)(6). Under Federal Rule of Civil Procedure 8(a)(2), a pleading need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R.CIV.P. 8(a)(2). In ruling on a motion to dismiss, the court must accept all of the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Iqbal,* 129 S.Ct. at 1949. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. The complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Bell Atlantic v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007)(italics in original). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal* at 1949.

"Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citation omitted). In deciding a motion to dismiss, a court may consider the full text of documents that are quoted in the complaint or documents that the plaintiff either possessed or relied upon in bringing the suit without converting the motion to a motion for summary judgment. *Bickley v. Caremark RX, Inc.,* 461 F.3d

not reflect post-petition payments, including the application of sale proceeds.

1325, 1329 n. 7 (11th Cir.2006); *Rothman v. Gregor,* 220 F.3d 81, 88–89 (2d Cir.2000). The movant has the burden of demonstrating that dismissal is appropriate. *Paul v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.),* 496 F.Supp.2d 404, 408 (D.Del.2007).

## II. Facts Alleged

Debtor and Key entered into a Master Lease and Progress Payment Loan and Security Agreement in January 2010 to provide financing for the build-out and purchase of necessary equipment for the imaging center. Key disbursed funds under the Progress Payment Loan based upon Debtor's written requests. On behalf of Debtor, Mr. Trell and Mr. Overend executed the Master Lease and Mr. Trell on behalf of Debtor executed the Progress Payment Loan and Security Agreement for Debtor. Paragraph 3 of the Progress Payment Loan and Security Agreement provided how Key would make disbursements. Paragraph 3 provides in relevant part:

> 3) *PROGRESS PAYMENTS*
>
> a) *The Progress Payments.* ... KEF hereby agrees to make the Progress Payments to the Suppliers upon Borrower's request at the times and in the amounts set forth in the Purchase Documentation [4] ...
>
> c) *Express Condition to Progress Payments.* ... KEF shall have no obligation to make any Progress Payment hereunder unless: ...

4. "Purchase Documentation" is defined as "purchase agreements and/or purchase orders with various third party vendors (the 'Suppliers') pursuant to which Borrower has agreed to purchase certain equipment from such suppliers (the 'Equipment')."

5. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES ... ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE TO

> ii) KEF shall have received the following documents duly executed and delivered by the parties thereto: ....
>
> (D) an original invoice, acceptable to KEF, from the supplier to whom payment is requested, countersigned by Borrower, ...;
>
> (F) with respect to payments to Borrower to reimburse it for payments previously made to Suppliers, either (1) copies of canceled checks (front and back) or (2) if funds were wired, a copy of a wire confirmation receipt, plus copies of invoices marked "paid in full," plus for confirmation purposes, the name and telephone number of such Supplier;
>
> ...

(Progress Payment Agreement ¶ 3, Docket No. 4; Exhibit C). The Master Lease Agreement also includes a provision for Lessee's Waivers.[5]

Debtor's written requests for disbursements from Key were made by Mr. Trell or Ms. Vinson on behalf of Debtor. Mr. Overend was not involved in requesting any draws on behalf of Debtor. Debtor's draw requests included requests for a MRI, a C–Arm, and X-ray machine. The MRI request included invoices from Hitachi Medical Systems, but Key also made disbursements to Debtor to purportedly purchase the C–Arm and X–Ray equipment upon Debtor's written request but without any back-up documentation or in-

RECOVER INCIDENTAL OR CONSEQUENTIAL DAMAGES FROM LESSOR FOR ANY BREACH OF WARRANTY OR FOR ANY OTHER REASON OR TO SET OFF OR DEDUCT ALL OR ANY PART OF ANY CLAIMED DAMAGES RESULTING FROM LESSOR'S DEFAULT, IF ANY, UNDER THE RELATED LEASE. (Lease Agreement ¶ 24, Docket No. 4; Exhibit A) (emphasis in original).

voice. The C–Arm and X–Ray equipment were not purchased by Debtor. Instead, potential or actual leasing physicians purchased the C–Arm and X–Ray equipment.

Key also made disbursements based upon the written request of Debtor, which were made upon a single-page of Debtor's letterhead and/or to third party entities named "MD Office Solutions, LLC" and "Medical Development Group, LLC" based upon their request made on their own letterhead. Key did not investigate these entities before making the requested disbursements. There is no evidence that these entities provided any service to Debtor or that any equipment was purchased for Debtor. Funds disbursed by Key were also allegedly unlawfully transferred to non-Debtor accounts by these third-party entities through the actions of Mr. Trell and/or Ms. Vinson.

Key also disbursed $1.5 million to Roger B. Kennedy, Inc., the project's general contractor, without a copy of the contract, request for lien waiver, and without any invoices or inspection of work. Roger B. Kennedy, Inc. later recorded a lien on the project site. To remove the lien, Mr. Overend personally loaned money to Debtor to satisfy Roger B. Kennedy, Inc.

In total, Debtor alleges that Key distributed approximately $3.9 million without sufficient documentation. Debtor defaulted under the Lease Documents, and the parties later entered into a Forbearance Agreement in April of 2011. The Forbearance Agreement required Debtor to make catch-up payments and included a release of claims. The release clause in the Forbearance Agreement provides:

> 9. *Release and Waiver of Any Claims and Defenses:* The Obligated Parties [6] represent that, as of this date, they have no claim or defense of any kind, including without limitation, offset or other-

wise, to payment in full under the terms of the Lease Documents, to the Lease Documents or to any other instrument or document executed therewith, including this Agreement. The Obligated Parties further represent that they do not have any claim whatsoever against KEF, its officers, attorneys, agents, employees, successors or assigns ("Released Parties"), arising out of the financial relationships between them and the Released Parties. To the extent that any such claim, set-off or defense may exist, the Obligated Parties on behalf of themselves and their successors and assigns, hereby release and forever discharge Released Parties from any and all claims, demands, and causes of action, known or unknown, that the Obligated Parties may have as of the date of this Agreement, arising out of or in any way connected with, directly or indirectly:

> —This Agreement and/or the financial relationship between and among any of the Obligated Parties and the Released Parties, prior to the date of this Agreement.

> —Any representations, commitments, agreements or statements made, or allegedly made, by Released Parties, their agents or employees at any time to any of the Obligated Parties, prior to the date of this Agreement; and

> —Any negotiations concerning or relating to loans or other credit allegedly committed to by Released Parties to any of the Obligated Parties prior to or during the negotiations relating to the formation and execution of this Agreement, or the agreements contemplated hereby, regardless of whether such negotiations or commitments were oral or in writing.

---

**6.** Obligated Parties include Debtor, Mr. Trell and Mr. Overend.

**The Obligated Parties hereby stipulate and agree that in consideration for the financial accommodations as set forth in this Agreement, any and all such claims arising prior to the date of this Agreement, shall be and hereby are forever released, settled, waived, adjusted and discharged.**

The Obligated Parties further acknowledge and agree that KEF's actions to date, in connection with or in the administration of the Lease Documents, have been reasonable, appropriate, and do not constitute and have not constituted interference with or an attempt to control or actual control of any assets or operations of any business of any of the Obligated Parties.

(Forbearance Agreement ¶ 9, Docket No. 4; Exhibit B) (emphasis in original).

There is no allegation that Mr. Trell's or Ms. Vinson's draw requests on behalf of Debtor were outside the scope of their employment. There is no allegation that Key knew or was aware of the alleged unlawful scheme or actions of Mr. Trell and/or Ms. Vinson and their related entities. There are no allegations that Key exerted control over Debtor's requests for funds or Debtor's build-out of the imaging center.

## III. Discussion

■ Key argues that Debtor waived its claims against Key under the terms of the Master Lease and Forbearance Agreement. Key asserts that based upon the waivers, as a matter of law, Debtor is barred from bringing any claims within the scope of the waiver. Debtor states that waiver is an affirmative defense, and, therefore, improper to assert in a motion to dismiss.

This Court has previously held that an affirmative defense can be considered at the motion to dismiss stage when such a determination can be made from the face of the complaint. *See In re Secure Buildout LLC*, 2012 WL 4511243 *3 (Bankr. N.D.Ga. Aug. 22, 2012) (considering a statute of limitation affirmative defense raised in an motion to dismiss). Additionally, other courts in this district have similarly considered contractual waivers when ruling on a Rule 12(b)(6) motion to dismiss when there is no factual dispute regarding the waiver. *E.g., Twin City Fire Ins. Co. v. Hartman, Simons & Wood, LLP*, 2013 WL 8368744 n. 3 (N.D.Ga. Nov. 25, 2013). Here, the Court is permitted to look at the contractual waiver provisions included in the agreements referenced and relied upon by Debtor to determine whether Debtor's claims against Key survive.

Debtor cites authority for its position that a waiver defense should be limited to a party's answer. Yet, the case support Debtor presents is distinguishable from these facts. In *In re Servico, Inc.*, the defendants asserted that the plaintiff failed to plead the fraud claims with the required particularity and that the plaintiff had waived such claims based upon his prior conduct. 144 B.R. 557, 559 (Bankr. S.D.Fla.1992). The *Servico* court determined that the defendants' waiver assertion implicated factual issues which could not be raised in a motion to dismiss. *Id.* Moreover, the equitable doctrines of waiver and estoppel were addressed in *Servico*, not the application of a contractual waiver provision in agreements executed by sophisticated parties. Here, there are no factual issues implicated by the Court's interpretation of the provisions. Also, *In re Lexi Development Co., Inc.*, 453 B.R. 440, 446 (Bankr.S.D.Fla.2011) is unpersuasive. In *Lexi*, the court's statements regarding waiver were merely dicta since the asserting party did not raise the waiver argument at oral argument.

Although Key's waiver and statute of limitations (discussed below) arguments

are affirmative defenses, which are ordinarily asserted in an answer, based upon the facts and circumstances of this action, such affirmative defenses are proper in Key's Motion to Dismiss. Debtor includes the internal citation of *Matter of W. Allen Young & Associates, Inc.*, 15 B.R. 20, 22 (Bankr.M.D.Fla.1981), which explains that a waiver is not an absolute defense and that a plaintiff should be permitted to establish, for instance, that the waiver was not supported by consideration or that it was obtained through overreaching or fraud. However, there are instances, like this one, where all of Debtor's counts rely upon the validity of the Agreements, so, therefore, the applicability of contractual provision is a legal determination to be made when assessing whether Debtor has asserted plausible claims. Because there are no issues of fact and the claims arise from the financial relationship between the parties created by the Agreements, determining whether the waiver bars Debtor's claims is appropriate in this Motion to Dismiss. *See Bank of the Ozarks v. 400 South Land Co., LLC*, 2012 WL 3704807 *5 (N.D.Ga. Aug. 27, 2012).

### A. Effect of the Forbearance Agreement's Waiver Provisions

Because Key's waiver argument is appropriate to consider, the scope and application of the waiver to Debtor's claims is now addressed. The applicable law regarding the terms of the various agreements is unclear. The Progress Payment Loan indicates that New York law governs "all matters of construction, validity and performance, conflicts, etc." (Docket No. 5; Exhibit C). The Forbearance Agreement provides that the governing law is controlled by the "Lease Documents," which includes the Master Lease that selects Colorado law (Docket No. 5; Exhibit A) and the Continuing Security Agreement (Claim No. 8, p. 14), which elects to make New York law applicable.

Bankruptcy Courts may have discretion to decide whether to apply the forum state's or the federal choice of law rules in a bankruptcy proceeding in which state law determines the rights of the parties. *In re Int'l Mgmt. Assocs., LLC*, 495 B.R. 96, 102 (Bankr.N.D.Ga.2013). Although the Eleventh Circuit has not ruled in a binding opinion regarding this choice of law issue, the unpublished decision of *Mukamal v. Bakes (In re Far & Wide Corp.)*, 378 Fed.Appx. 890, 896 (11th Cir. 2010) (unpublished), held that the forum state's choice of law rules apply in bankruptcy proceedings when bankruptcy jurisdiction exists under 28 U.S.C. § 1334 and "when the underlying rights and obligations of the parties are defined by state law." Therefore, applying Georgia law, the various choice of law provisions are enforceable. *Nationwide Logistics, Inc. v. Condor Transp., Inc.*, 270 Ga.App. 277, 606 S.E.2d 319, 322 (2004). Generally, Georgia only limits a party's choice of law provision when enforcing it would be contrary to public policy. *Id.* These claims and this action do not raise any public policy concern, so the choice of law provisions elected by the parties will be applied.

The conflicting choice of law provisions in the relevant Lease Documents have no effect on the outcome in this case, however. The parties do not make distinctions as to the applicable laws in their briefs, and the respective laws of each state regarding the effect and enforcement of contractual waivers and releases are consistent. Here, although the Master Lease waiver includes a prospective waiver of claims, the Forbearance waiver is the Court's focus based upon the later date of the Agreement and the broad scope of the Agreement.

Debtor attempts to limit the scope of the Forbearance Agreement's waiver provision because Key's purported improper conduct

occurred under the Progress Payment Loan and Security Agreement. Yet, the later Forbearance Agreement's waiver incorporated any existing claim, set-off or defense connected with the financial relationship between the parties. Although the Progress Payment Loan and Security Agreement was not specifically referred to in the Forbearance Agreement, the Forbearance Agreement is partially based upon Debtor's default under the Master Lease. The first recital of the Progress Payment Loan and Security Agreement notes the concurrent execution of the Master Lease by the parties. The Forbearance Agreement's waiver is sufficiently broad to include Key's purported conduct under the Progress Payment Loan and Security Agreement.

Debtor also argues that the Forbearance Agreement's release is limited to the claims existing at the time it was executed (April 27, 2011). Debtor also states that the release cannot affect its claims for Equitable Disallowance, Equitable Subordination, Objection to Claim, and Preference Avoidance and Recovery because these claims only arise in bankruptcy and could not exist at the time of the prepetition Forbearance Agreement. As to the remaining claims, Debtor argues that these claims are based upon a recoupment theory not encompassed by the Forbearance Agreement's release.

The plain language of the Forbearance Agreement's release does not support Debtor's position that the state law claims are not subject to the release. The purported conduct giving rise to Debtor's claims is sufficiently captured by the release and waiver of the Forbearance Agreement, which provides in relevant part:

"To the extent that *any such claim, set-off or defense may exist*, the Obligated Parties on behalf of themselves and their successors and assigns, hereby release and forever discharge Released Parties from *any and all claims, demands, and causes of action, known or unknown*, that the Obligated Parties may have as of the date of this Agreement, arising out of or in any way connected with, directly or indirectly:

—*This Agreement and/or the financial relationship* between and among any of the Obligated Parties and the Released Parties, prior to the date of this Agreement.

(Forbearance Agreement ¶ 9) (emphasis added).

## B. The Forbearance Waiver bars Debtor's claims for Breach of Contract, Negligence, and Lender Liability.

The Forbearance Agreement is sufficiently broad to bar Debtor from bringing its claims for Breach of Contract, Negligence, and Lender Liability. Colorado law provides that "[a] release is an agreement to which the general contract rules of interpretation and construction apply." *Chase v. Dow Chemical Co.*, 875 F.2d 278 (10th Cir.1989). Unless ambiguous, a contract under Colorado law is interpreted and enforced "according to the plain and ordinary meaning of its language." *Scott's Liquid Gold, Inc. v. Lexington Ins. Co.*, 293 F.3d 1180, 1184 (10th Cir.2002). New York law similarly provides that, "a valid release which is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced as a private agreement of the parties." *DuFort v. Aetna Life Ins. Co.*, 818 F.Supp. 578, 581 (S.D.N.Y.1993) (citations omitted). Courts in New York generally enforce contractual waivers or limitations of liability. *Baidu, Inc. v. Register.com, Inc.*, 760 F.Supp.2d 312, 317 (S.D.N.Y.2010) (citing *Indus. Risk Insurers v. Port Auth. of N.Y. & N.J.*, 387 F.Supp.2d 299, 307 (S.D.N.Y.2005) ("[P]ar-

ties, especially those of equal bargaining power, should be able to rely upon the general New York rule that enforces contracts for the release of claims of liability.")

■■■ Here, the Forbearance Agreement unambiguously waives "any and all claims, demands, and causes of action, known or unknown . ... arising out of or in any way connected with, directly or indirectly ... [t]his Agreement and/or the financial relationship between and among any of the Obligated Parties and the Released Parties, prior to the date of this Agreement." Under the relevant applicable state laws, the release provision is enforceable and Debtor's claims for breach of contract, negligence, and lender liability were released. Although Debtor is correct that this waiver only waives claims existing at the time of the Forbearance Agreement, such waiver is not dependent on Debtor's knowledge of such claims. The plain language of the release includes any and all claims, demands and causes of action whether known or known. Therefore, any argument by Debtor that relies upon Mr. Overend's personal knowledge of certain alleged facts and circumstances regarding the disposition of funds paid to or on behalf of Debtor by Key is simply not supported by law. In fact, under New York law, the enforceability of a release does not depend on whether the releasor was subjectively aware of the precise claims to which the release pertains upon executing the release. *Mergler v. Crystal Props. Assocs., Ltd.*, 179 A.D.2d 177, 583 N.Y.S.2d 229, 232 (1st Dep't 1992). Instead, if the language of a contract, including a release, is clear and unambiguous "effect will be given to the intention of the parties as indicated by the language employed and the fact that one of the parties may have intended something else is irrelevant." *Clark v. Buffalo Wire Works Co., Inc.*, 3 F.Supp.2d 366, 373 (W.D.N.Y.1998) (citing *LeMay v. H.W. Keeney, Inc.*, 124 A.D.2d

1026, 508 N.Y.S.2d 769, 770 (4th Dep't 1986); *leave denied*, 69 N.Y.2d 607, 514 N.Y.S.2d 1025, 507 N.E.2d 321 (1987)). For these reasons, it is proper to dismiss Debtor's claims for breach of contract, negligence and lender liability as barred by the Forbearance Agreement.

## C. Debtor fails to state a claim for gross negligence.

Debtor asserts that a gross negligence claim cannot be waived as a matter of public policy. Key counters that claims for negligence cannot be barred by advance waivers but that the terms of the Forbearance Agreement include a release of all claims based on the alleged behavior prior to the execution of the Forbearance Agreement. The Court agrees that the plain terms of the Forbearance Agreement capture the behavior that Debtor characterizes as gross negligence in the complaint. There is no behavior by Key that Debtor relies on its claim that occurred after the Forbearance Agreement was executed. Again, the broad language of the release captures any claims, known or unknown, that existed concerning the financial relationship between the parties.

■■■ However, the applicable state laws selected by the parties suggest that a gross negligence claim may not be contractually released. Under New York law, claims for gross negligence may not be covered by contractual releases or waivers. *E.g., Indus. Risk Insurers v. Port Auth. of New York & New Jersey*, 387 F.Supp.2d 299, 307 (S.D.N.Y.2005) *affd in part, remanded in part sub nom. Indus. Risk Insurers v. Port Auth. of N.Y. & N.J.*, 493 F.3d 283 (2d Cir.2007). Similarly, under Colorado law, a contractual release may not bar civil liability for gross negligence. *E.g., Squires ex rel. Squires v. Goodwin*, 829 F.Supp.2d 1062, 1076 (D.Colo.2011) *affd sub nom. Squires v. Breckenridge*

*Outdoor Educ. Ctr.,* 715 F.3d 867 (10th Cir.2013).

■■■■■■ Irrespective of the scope of the release in the Forbearance Agreement and whether a claim for gross negligence can be waived, Debtor fails to state a claim for gross negligence. Under New York law, gross negligence differs from negligence in kind and in degree. *Indus. Risk Insurers,* 387 F.Supp.2d at 306. Conduct amounting to gross negligence must demonstrate "a reckless disregard for the rights of others," or be of a kind that "smacks" of intentional wrongdoing. *Colnaghi U.S.A., Ltd. v. Jewelers Prot. Srvs.,* 81 N.Y.2d 821, 824, 595 N.Y.S.2d 381, 611 N.E.2d 282 (1993). Under Colorado law, "gross negligence is willful and wanton conduct, that is, committed recklessly, with conscious disregard for the safety of others." *Hamill v. Cheley Colo. Camps, Inc.,* 262 P.3d 945, 954 (Colo.App.2011). "Willful and wanton conduct is purposeful conduct committed recklessly that exhibits an intent consciously to disregard the safety of others. Such conduct extends beyond mere unreasonableness." *Forman v. Brown,* 944 P.2d 559, 564 (Colo.App.1996); *Stamp v. Vail Corp.,* 172 P.3d 437, 449 (Colo.2007) ("Conduct is willful and wanton if it is a dangerous course of action that is consciously chosen with knowledge of facts, which to a reasonable mind creates a strong probability that injury to others will result.") (internal quotation marks and citation omitted).

The Complaint includes legal conclusions that Key acted "willfully and wantonly with a conscious indifference," but there are no factual allegations, nor any inference from which the Court could conclude, that Key had any knowledge of Debtor's fraudulent conduct. With a motion to dismiss for failure to state a claim, the factual allegations of the complaint are assessed, while the legal conclusions are disregarded. Here, the type of conduct that would

amount to gross negligence is not factually alleged in the Complaint.

The Complaint alleges that Debtor improperly requested funds from Key, and Mr. Trell and/or Ms. Vinson unlawfully diverted funds received by Debtor under the Progress Payment Loan. Debtor's complaint, on its face and as a matter of law, fails to establish the requisite proximate cause element for a gross negligence claim. Key's disbursement of funds upon the written request of Debtor does not amount to any intentional or purposeful conduct to harm Debtor that could plausibly amount to a gross negligence cause of action, even when viewing facts in the Complaint as true. Accordingly, it is more appropriate to dismiss this claim than give Debtor leave to amend the Complaint.

### D. Debtor's claim for Equitable Disallowance/Reduction fails as a matter of law.

■■■■ Key argues that Debtor's claim for Equitable Disallowance/Reduction is also barred by the Forbearance Agreement's waiver. The plain language of the waiver releases "any and all claims, demands, and causes of action, known and unknown, arising out of or in any way connected with, directly or indirectly ... the financial relationship between and among the Obligated Parties and Released Parties, prior to the date of this Agreement." Arguably this language is broad enough to capture the purported inequitable conduct that gives rise to the equitable disallowance claim in this bankruptcy proceeding. Debtor, however, argues that since an equitable disallowance is a cause of action only arising in a bankruptcy proceeding, the waiver is not applicable. Indeed, there is non-binding caselaw that states bankruptcy-related claims cannot be captured by a contractual release provision unless explicitly stated. *E.g., In re Am.*

*Sweeteners, Inc.,* 248 B.R. 271, 277 (Bankr. E.D.Pa.2000). Here, there is no dispute that the Forbearance Agreement's release does not explicitly reference or include bankruptcy claims.

Under Debtor's theory, however, the count for equitable disallowance of claim still fails. The applicable law for a pure bankruptcy claim that Debtor asserts is not contemplated by the Agreements would no longer invoke the parties' contractual choice of law. Debtor's claim for Equitable Disallowance/Reduction is simply not available in this district. The Eleventh Circuit has held that only subordination of claims, not their disallowance, may be permitted. *In re Mobile Steel Co.,* 563 F.2d 692, 699 (5th Cir.1977) ("First equitable considerations can justify only the subordination of claims, not their disallowance."). Although other courts have recognized a claim, the Eleventh Circuit has not. *Compare In re Adelphia Commc'ns Corp.,* 365 B.R. 24, 71–73 (Bankr.S.D.N.Y.2007) *aff'd in part sub nom. Adelphia Recovery Trust v. Bank of Am., N.A.,* 390 B.R. 64 (S.D.N.Y.2008) *with In re Welzel,* 275 F.3d 1308, 1318 (11th Cir.2001).

### E. Debtor fails to state a claim for Equitable Subordination.

■ Again traveling under Debtor's legal theory that the Forbearance Agreement's waiver is inapplicable to the Equitable Subordination claim, Debtor fails to sufficiently plead facts to make out the requisite inequitable conduct element for this cause of action. The three elements to be established to assert an equitable subordination claim are:

(1) that the claimant has engaged in inequitable conduct;

(2) that the conduct has injured creditors or given unfair advantage to the claimant; and

(3) that subordination of the claim is not inconsistent with the Bankruptcy Code.

*See In re Mobile Steel,* 563 F.2d at 699–700 (applying the claim under the Bankruptcy Act).

■ Although typically inequitable conduct would be a question of fact, the facts Debtor asserts in the Complaint are insufficient for the Court to infer a plausible Equitable Subordination claim. The burden of proof for an equitable subordination claim is dependent on the status of the creditor. If the creditor is not an insider or fiduciary, the debtor has a higher burden to prove with particularity more egregious conduct such as fraud, spoliation or overreaching. *In re Aida's Paradise, LLC,* 485 B.R. 806, 813 (Bankr.M.D.Fla. 2013). Here, there are no allegations to support Key's status as an insider or a fiduciary. Debtor bases its Equitable Subordination claim on Key's breach of the Progress Payment Loan's terms, lack of compliance with regulatory standards, lack of compliance with anti-money laundering laws, lack of good faith and fair dealing, and failure to comply with Key's own policies and procedures. These allegations of purported inequitable conduct do not rise to the level of egregious conduct required for a general creditor.

Additionally, Debtor also fails to state how Key's payment on Debtor's requested disbursements caused injury to creditors. Debtor merely states that Key's purported misconduct "made it less likely that Debtor's other creditors will collect on their debts" and caused harm to Debtor. Again, there are causation problems with Debtor's theory and no specific facts regarding injury to creditors. There are also no facts to support a position that Key's purported misconduct provided Key with an unfair advantage. As a result, it is appropriate to dismiss Debtor's Equitable

Subordination claim because any leave to amend would be futile.

### F. Debtor's Preference Avoidance and Recovery Claim is Time Barred.

Defendant argues that Debtor's complaint for the avoidance and recovery of alleged preferential transfers is barred because this claim was brought after two-years from the filing date. 11 U.S.C. § 546(a) (2012) (noting that a claim under section 547 "may not be commenced after . . . 2 years after the entry of the order for relief; or 1 year after the appointment or election of the first trustee . . . if such appointment or election occurs before the expiration of the [2 year period].''). This action was filed April 7, 2014, and Debtor filed its Chapter 11 petition on July 11, 2011.

Debtor responds to Defendant's argument the preference claim is barred by the statute of limitations by asserting that Key's position is premature. As discussed regarding Debtor's opposition to Key's general waiver defense, a claim may still be dismissed under a motion to dismiss when "it is apparent from the face of the complaint that the claim is time-barred." *In re Secure Buildout LLC,* 2012 WL 4511243, at *3 (quoting *La Grasta,* 358 F.3d at 845–6) (citations omitted); *accord Avco Corp. v. Precision Air Parts, Inc.,* 676 F.2d 494, 495 (11th Cir.1982) ("[A] statute of limitations defense may be raised on a motion to dismiss for failure to state a claim for which relief can be granted under Fed.R.Civ.P. 12(b)(6) when the complaint shows on its face that the limitations period has run.") (citations omitted).

Debtor asserts in its opposition to the Motion to Dismiss that it has an equitable tolling defense to the statute of limitations issue. Although a plaintiff is not required to anticipate and negate affirmative defenses in its complaint, the facts Debtor relies upon to bring the preference action do not support a legally plausible equitable tolling defense. As in *In re Secure Buildout, LLC,* the facts in the complaint do not support the basis for tolling the section 546(a) statute of limitations. ·Instead, the preference claim, on its face, can be determined to be time barred. *La Grasta v. First Union Sec., Inc.,* 358 F.3d 840, 845–46 (11th Cir.2004) (citations omitted)

Generally, the doctrine of equitable tolling allows a court to toll the statute of limitations until a time that the court determines would have been fair for the statute of limitations to begin running on the plaintiffs claims. *See Justice v. U.S.,* 6 F.3d 1474, 1475 (11th Cir.1993) ("The doctrine of equitable tolling abates the harsh operation of the statute of limitations under certain circumstances in which barring a plaintiff's potentially meritorious action would be unjust."). "Equitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." *Sandvik v. U.S.,* 177 F.3d 1269, 1271 (11th Cir.1999).

Debtor's equitable tolling legal theory fails as a matter of law. Debtor's own facts show that Debtor's own actors; Mr. Trell and Ms. Vinson, in the scope of their employment, were responsible for the alleged misappropriation and diversion of received funds and the improper requests for funds disbursed by Key. Although Debtor seeks to use Mr. Overend's later discovery of the alleged scheme as the equivalent time period of Debtor's knowledge of these actions, such a perspective is not legally accurate. Under the theory of apparent authority, a corporation is bound by the fraudulent conduct of its agents, engaged in its business where it puts such agent to work. O.C.G.A. § 10–6–56; *Home Materials, Inc. v. Auto Owners Ins.*

*Co.,* 250 Ga. 599, 601–02, 300 S.E.2d 139 (1983). The law does not equate a passive member's personal knowledge to that of the corporation acting through its designated members. Debtor elected to position itself with Mr. Trell as the managing member, and the allegations are that Mr. Trell, on behalf of Debtor, made the very disbursement requests that it seeks to avoid based upon the Debtor's lack of knowledge. (Response; Docket No. 10, pp. 4–5).

Debtor's position is circular and not supported by the very facts it relies upon to bring this action. Debtor's recourse is against Mr. Trell and/or Ms. Vinson and the related entities; it does not create or preserve a claim against third-party Key. Key received no benefit from these alleged improper requests and was similarly harmed through Debtor's default and minimized security interest. There is no legal or factual basis for Debtor's equitable tolling position. Accordingly, it is proper to dismiss the avoidance and recovery of the preference claim because it is time-barred.

### G. Debtor's Objection to Key's Claim survives for the purpose of amending the claim to accurately reflect amounts Key has received since the claim was filed.

Lastly, Debtor's Objection to Claim count will survive. Key concedes that its claim needs to be amended to reflect post-petition amounts received, including sale proceeds. To date, the Key claim has not been amended, and, therefore Debtor's Objection to Claim is not proper for dismissal.

For the reasons stated above, Defendant's motion to dismiss is partially granted. Accordingly, it is

**ORDERED** that Defendant's Motion to Dismiss is **GRANTED** as to all counts except for the Objection to Claim.

The Clerk is directed to mail a copy of this Order to Plaintiff, Defendant, and their respective counsel.